Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

Alexandria Division

| | | |
|---|---|---|
| Hassan Sultan | ) | Case No. 1:23 CV457 |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* ☑ Yes ☐ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| See attached | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | ) | |

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Hassan Sultan |
| Street Address | 3700 Millbank Court |
| City and County | Fairfax, Fairfax County |
| State and Zip Code | VA 22031 |
| Telephone Number | 703-606-8151 |
| E-mail Address | hsultan@gmail.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

Name                        Nosheen H. Malik

Job or Title *(if known)*    Software Developer

Street Address              6310B Eagle Ridge Lane

City and County             Alexandria, Fairfax County

State and Zip Code          VA 22312

Telephone Number            703-606-8151

E-mail Address *(if known)*

Defendant No. 2

Name                        Nicholas J. Solan

Job or Title *(if known)*    Attorney

Street Address              3104 24th Street NE

City and County             Washington

State and Zip Code          DC 20018

Telephone Number

E-mail Address *(if known)*

Defendant No. 3

Name                        Andrew P. Hoffman

Job or Title *(if known)*    Attorney

Street Address              12906B Grays Pointe Rd,

City and County             Fairfax, Fairfax County

State and Zip Code          VA 22033

Telephone Number

E-mail Address *(if known)*

Defendant No. 4

Name                        Jacob Alzamora

Job or Title *(if known)*    Attorney

Street Address              8897 WHITE ORCHID PL

City and County             LORTON, FAIRFAX COUNTY

State and Zip Code          VA 22079

Telephone Number

E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 5

    Name                              Solan Alzamora PLLC c/o Jacob Alzamora, RA

    Job or Title *(if known)*

    Street Address                    10300 Eaton Pl Ste 170

    City and County                  Fairfax, Fairfax County

    State and Zip Code            VA 22030

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 6

    Name                              Mark C. Vogel

    Job or Title *(if known)*         CPA

    Street Address                    11418 Rockville Pike Apt 406

    City and County                  Rockville, Montgomery County

    State and Zip Code            MD, 20852

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 7

    Name                              Kirstine N. Fors a.k.a Kirstine N. Conners

    Job or Title *(if known)*         CPA

    Street Address                    3446 Lyrac St,

    City and County                  Oakton, Fairfax County

    State and Zip Code            VA, 22124-2213

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 8

    Name                              Gross Mendelsohn and Associates, P.A., c/o Tyler S. Dean, RA

    Job or Title *(if known)*

    Street Address                    3877 FAIRFAX RIDGE ROAD, SUITE 200N,

    City and County                  FAIRFAX, FAIRFAX COUNTY

    State and Zip Code            VA, 22030

    Telephone Number

    E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 9

    Name                               Bruce D White

    Job or Title *(if known)*     Retired Judge

    Street Address                2905 Pleasant Glen Dr

    City and County            Herndon, Fairfax County

    State and Zip Code         VA 20171

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 10

    Name                               Randolph A. Beales

    Job or Title *(if known)*     Judge

    Street Address                3025 Northlake Dr.

    City and County            Henrico, Henrico County

    State and Zip Code         VA 23233

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 11

    Name                               Clifford L. Athey, Jr.

    Job or Title *(if known)*     Judge

    Street Address                112 N Easterly St.

    City and County            Front Royal, Warren County

    State and Zip Code         VA 22630

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 12

    Name                               James W. Haley. Jr.

    Job or Title *(if known)*     Senior Judge

    Street Address                808 Prince Edward St,

    City and County            Fredericksburg,

    State and Zip Code         VA 22401

    Telephone Number

    E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 13

| | |
|---|---|
| Name | D. Arthur Kelsey |
| Job or Title *(if known)* | Justice |
| Street Address | 8550 CRITTENDEN RD |
| City and County | SUFFOLK |
| State and Zip Code | VA 23433 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 14

| | |
|---|---|
| Name | Charles S. Russell |
| Job or Title *(if known)* | Senior Justice |
| Street Address | 2164 Cedarfield Ln. |
| City and County | Henrico, Henrico County |
| State and Zip Code | VA 23233 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 15

| | |
|---|---|
| Name | David Berhard |
| Job or Title *(if known)* | Judge |
| Street Address | 11646 FOREST HILL CT |
| City and County | FAIRFAX, FAIRFAX COUNTY |
| State and Zip Code | VA 22030 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 16

| | |
|---|---|
| Name | Marla Graff Decker |
| Job or Title *(if known)* | |
| Street Address | 10806 Weather Vane Rd |
| City and County | Henrico, Henrico County |
| State and Zip Code | VA 23238 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. *17*

    Name                            Donald W. Lemons

    Job or Title *(if known)*

    Street Address                      106 Millies Ln.

    City and County                  Nellysford, Nelson County

    State and Zip Code            VA 22958

    Telephone Number

    E-mail Address *(if known)*

Defendant No. *18*

    Name                            S. Barnard Goodwyn

    Job or Title *(if known)*

    Street Address                      714 Aguila Dr.

    City and County                  Chesapeake

    State and Zip Code            VA 23322

    Telephone Number

    E-mail Address *(if known)*

Defendant No. *19*

    Name                            Supreme Court of Virginia, Office of Attorney General

    Job or Title *(if known)*

    Street Address                      202 North Ninth Street

    City and County                  Richmond

    State and Zip Code            VA 23219

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question                     ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

See attached

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

   a.    If the plaintiff is an individual

   The plaintiff, *(name)*   Hassan Sultan                                     , is a citizen of the State of *(name)*   Virginia

   b.    If the plaintiff is a corporation

   The plaintiff, *(name)*                                     , is incorporated under the laws of the State of *(name)*
   and has its principal place of business in the State of *(name)*

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

   a.    If the defendant is an individual

   The defendant, *(name)*   See attached.                                     , is a citizen of the State of *(name)*                    . Or is a citizen of
   *(foreign nation)*

Page 3 of 5

b.    If the defendant is a corporation

The defendant,  *(name)*   See attached                              , is incorporated under

the laws of the State of *(name)*                                    , and has its

principal place of business in the State of *(name)*

Or is incorporated under the laws of *(foreign nation)*

and has its principal place of business in *(name)*

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

The amount in controversy is more than 75k becuase the damages caused by the the actions of defendants are of more than 75k.

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

See attached

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attached

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            04/07/2023

Signature of Plaintiff

Printed Name of Plaintiff        Hassan Sultan

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

Hassan Sultan,                                                )
                                                             )
         Plaintiff,                                 )
                                                             )
    vs.                                                    )
                                                             )
Nosheen H. Malik, Nicholas J. Solan, Andrew P.               )
                                                             )
Hoffman, Jacob Alzamora, Solan Alzamora PLLC,                )
                                                             )
Mark C. Vogel, Kirstine N. Conners (a.k.a. Kirstine N.       )
                                                             )
Fors), Gross Mendelsohn and Associates, P.A., Bruce          )
                                                             )
D. White in his personal and official capacity, Randolph     )
                                                             )
A. Beales in his personal and official capacity, Clifford    )
                                                             )
L. Athey, Jr. in his personal and official capacity, James   )
                                                             )
W. Haley, Jr. in his personal and official capacity, D.      )
                                                             )
Arthur Kelsey in his personal and official capacity,         )
                                                             )
Charles S. Russell in his personal and official capacity,    )
                                                             )
David Bernhard in his personal and official capacity,        )
                                                             )
Marla Graff Decker in her personal and official              )
                                                             )
capacity, Donald W. Lemons in his personal and official      )
                                                             )
capacity, S. Barnard Goodwyn in his personal and             )
                                                             )
official capacity, Supreme Court of Virginia.                )
                                                             )
         Defendants.                                )
                                                             )
———————————————————————                                      )

**JURY TRIAL DEMANDED**

Case No. 1:23cv-457

**Virginia Case Numbers:**

Divorce Case #:
Fairfax Circuit Court Case # CL2018-9198
VA Court of Appeals Case # 0747-19-4
VA Supreme Court Case # 200771

Child Custody Case #s:
Fairfax Juvenile and Domestic Relations Court Case #
JJ442112-05-00, -06-00
    JJ442113-05-00, -06-00
Fairfax Circuit Court Case #
    JA2020-254, JA2020-255

## COMPLAINT

Plaintiff Hassan Sultan, for his Complaint against the above-named defendants, states as follows:

## INTRODUCTION

This is an action for money damages, declaratory, and injunctive relief brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourteenth Amendments to the United States Constitution, and under the law of the Commonwealth of Virginia, against Nosheen H. Malik, Nicholas J. Solan, Andrew P. Hoffman, Jacob Alzamora, Solan Alzamora PLLC, Mark C. Vogel, Kirstine N. Conners (a.k.a. Kirstine N. Fors), Gross Mendelsohn and Associates, P.A., Bruce D. White in his personal and official capacity, Randolph A. Beales in his personal and official capacity, Clifford L. Athey, Jr. in his personal and official capacity, James W. Haley, Jr. in is personal and official capacity, D. Arthur Kelsey in his personal and official capacity, Charles S. Russell in his personal and official capacity, David Bernhard in his personal and official capacity, Marla Graff Decker in her personal and official capacity, Donald W. Lemons in his personal and official capacity, S. Barnard Goodwyn in his personal and official capacity, and Supreme Court of Virginia.

1. Plaintiff, Hassan Sultan alleges the following against Defendants:

    1.1. the Defendants violated his 14th Amendment rights to due process (*"No state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any state deprive any person of life, liberty, or property; without the due process of the law")* AND equal protection (*"nor deny any person within its jurisdiction the equal protection of the laws.")*.

    1.2. The Defendants acted under the 'color of state law' to deprive the plaintiff's rights (*"Although a private [party] may cause a deprivation of...a right, [it] may be subjected to liability under § 1983 only when [it] does so under color of law")*.

1.3. The actions of the Defendants are "fairly attributable to the state," rendering them liable under § 1983 under the two-part test prescribed by the United States Supreme Court in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) *("First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a person for whom the State is responsible….Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State")*

1.3.1.  Plaintiff alleges that the deprivation was caused under Virginia's Equitable Distribution Statute § 20-107.3 in a divorce proceeding and subsequent Child Custody proceedings under §20-124.2. *("State Action")*.

1.3.2.  Plaintiff alleges that the Defendants are state actors because they have either acted together with or obtained significant aid from Judges Bruce D. White, Randolph A. Beales, Clifford L. Athey, James W. Haley, David Bernhard, S. Bernard Goodwyn, D. Arthur Kelsey, and Charles S. Russell. ("Color of Law") to deprive the Plaintiff of his rights. Moreover, the Defendants' conduct is otherwise attributable to the state as the Defendants were acting under the color of state law.

**JURISDICTION AND VENUE**

2.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1334 over Plaintiff's cause of action arising under the Constitution of the United States and 42 U.S.C § 1983 and under the Declaratory Judgement Act, 28 U.S.C §§ 2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's cause of action arising under the Commonwealth of Virginia's law under 28 U.S.C § 1367.

3. Venue lies in the United States District Court for the Eastern District of Virginia because the events or omissions giving rise to Plaintiff's claims occurred in Fairfax County, Virginia 28 U.S.C § 1391(b)(2).

4. The divisional venue is in the Alexandria Division because the events leading to the claim for relief arose in Fairfax County.

## PARTIES

5. Plaintiff Hassan Sultan is an adult citizen of the Commonwealth of Virginia.

6. Defendant Nosheen Malik is an adult citizen of the Commonwealth of Vriginia.

7. Defendant Nicholas J. Solan is an attorney practicing in Virginia under the law firm of Solan Alzamora, PLLC. Solan is a citizen of the District of Columbia. Solan is a partner in the firm. Solan is being sued for his own actions in colluding with the Defendant Judges thus providing significant assistance to Defendant Malik in violating Plaintiff 14th Amendment rights. Solan is also being sued under the theory of *Respondeat Superior* for the actions of his Associate Andrew P. Hoffman.

8. Defendant Andrew P. Hoffman is an attorney practicing in Virginia under the law firm of Solan Alzamora, PLLC. Hoffman is a citizen of Virginia. Hoffman is being sued for his own actions in colluding with Defendant Judges thus providing significant assistance to Defendant Malik in violating Plaintiff's 14th Amendment rights.

9. Defendant Jacob Alzamora is an attorney in Virginia under the law firm of Solan Alzamora, PLLC. Alzamora is a citizen of Virginia. Alzamora is a partner in the firm. Alzamora is being sued for his own actions in colluding with Defendant Judges thus providing significant assistance to Defendant Malik in violating Plaintiff 14th Amendment

rights. Alzamora is also being sued under the theory of *Respondeat Superior* for the actions of his Associate Andrew P. Hoffman.

10. Defendant Solan Alzamora, PLLC, is a law firm with principal place of business in Fairfax County, Virginia. It is a Limited Liability Company incorporated under the laws of the Commonwealth of Virginia. It is the employer of Nicholas Solan, Andrew P. Hoffman, and Jacob Alzamora. Solan Alzamora, PLLC is being sued under the theory of *Respondeat Superior* for the actions of Defendant Solan, Hoffman, and Alzamora.

11. Defendant Mark C. Vogel is a CPA licensed in the Commonwealth of Virginia and qualified as an expert witness in this case. Vogel is a citizen of Maryland. Vogel's expert witness report violated basic principles of business valuation and accounting and said expert witness report is evidence of perjury. Moreover, Vogel was the supervisor of Kirstine N. Conners (a.k.a. Kirstine N. Fors) who testified as an expert witness in the underlying case. Vogel is being sued for his own actions, and also for the actions of Kirstine N. Conners under the theory of *Respondeat Superior.*

12. Defendant Kirstine N. Conners (a.k.a. Kirstine N. Fors) is a CPA licensed in the Commonwealth of Virginia and is a citizen of Virginia. Conners testified as an expert witness in the underlying case. Conners' expert witness report violated basic principles of business valuation and accounting and said expert witness report is evidence of perjury. Moreover, Conners offered perjured testimony in the court proceedings.

13. Gross, Mendelsohn & Associates, P.A. is an accounting firm headquartered in Baltimore, MD, and is incorporated under the laws of Maryland. It is a stock corporation and was the employer of Mark C. Vogel and Kirstine N. Conners (a.k.a. Kirstine N. Fors). It is being sued under the theory of *Respondeat Superior* as Conners and Vogel were acting within the

scope of their employment and in executing of the services for which Conners and Vogel were employed by Gross, Mendelsohn & Associates, P.A.

14. Bruce D. White is the former Chief Judge of the 19th Judicial Circuit of Virginia in Fairfax County, VA. He is a citizen of Virginia. He is sued in both his personal and official capacity for his own actions as a judge and for his actions as his own supervisor under the theory of *Respondeat Superior*. White, as his own superior, had personal knowledge of the violations of the Plaintiff's constitutional rights.

15. Randolph A. Beales is a judge of the Court of Appeals of Virginia and was on the Panel of the Court of Appeals, that intentionally committed violations of Plaintiff's 14th Amendment rights. If Beales is provided judicial immunity, then it would be provided under the presumption that Beales was acting within the scope of his employment in violating Plaintiff's 14th Amendment rights. Beales is a citizen of Virginia.

16. Clifford L. Athey, Jr. is a judge of the Court of Appeals of Virginia and was on the Panel of the Court of Appeals, that intentionally committed violations of Plaintiff's 14th Amendment rights. If Athey is provided judicial immunity, then it would be provided under the presumption that Athey was acting within the scope of his employment in violating Plaintiff's 14th Amendment rights. Athey is a citizen of Virginia.

17. James W. Haley, Jr. is a senior judge of the Court of Appeals of Virginia and was on the Panel of the Court of Appeals, that intentionally committed violations of Plaintiff's 14th Amendment rights. If Haley is provided judicial immunity, then it would be provided under the presumption that Haley was acting within the scope of his employment in violating Plaintiff's 14th Amendment rights. Haley is a citizen of Virginia.

18. D. Arthur Kelsey is a justice of the Supreme Court of Virginia and was on the Panel of the Supreme Court of Virginia, that intentionally committed violations of Plaintiff's 14th Amendment rights. If Kelsey is provided judicial immunity, then it would be provided under the presumption that Kelsey was acting within the scope of his employment in violating Plaintiff's 14th Amendment rights. Kelsey is a citizen of Virginia

19. Charles S. Russell is a senior justice of the Supreme Court of Virginia and was on the Panel of the Supreme Court of Virginia, that intentionally committed violations of Plaintiff's 14th Amendment rights. If Russel is provided judicial immunity, then it would be provided under the presumption that Russell was acting within the scope of his employment in violating Plaintiff's 14th Amendment rights. Russell is a citizen of Virginia.

20. S. Barnard Goodwyn is the current Chief Justice of the Supreme Court of Virginia and was on the Panel of the Supreme Court of Virginia, that intentionally committed violations of Plaintiff's 14th Amendment rights. If Goodwyn is provided judicial immunity in his personal capacity, then it would be provided under the presumption the Goodwyn was acting within the scope of his employment in violating Plaintiff's 14th Amendment rights. S. Barnard Goodwyn is the current Chief Justice of the Supreme Court of Virginia and the administrative head of Virginia's judiciary. He is also sued in his official capacity for injunctive relief as the Chief Justice of the Supreme Court of Virginia. He is a citizen of Virginia.

21. David Bernhard is a Judge of the Circuit Court of Fairfax County and intentionally committed violations of Plaintiff's 14th Amendment rights. If Bernhard is provided judicial immunity, then it would be provided under the presumption that Bernhard was acting

within the scope of his employment in violating Plaintiff's 14th Amendment rights. He is a citizen of Virginia.

22. Marla Graff Decker is the Chief Judge of the Court of Appeals of Virginia. She is sued in both her personal and official capacity under the theory of *Respondeat Superior*. Decker had personal knowledge of the violations of Plaintiff's rights that were committed in the Court of Appeals of Virginia. Decker is a citizen of Virginia.

23. Donald Lemons is a citizen of Virginia and is the former Chief Justice of the Supreme Court of Virginia. Lemons retired on February 1, 2022. He is sued in both his personal and official capacity under the theory of *Respondeat Superior*. Lemons either had knowledge of or should have had knowledge of the violations of Plaintiff's rights that were committed by various Courts in Virginia including 1) Circuit Court of Fairfax County, 2) Court of Appeals of Virginia, and 3) Supreme Court of Virginia. Actions of Fairfax County Circuit Court (i.e., Bruce D. White, and David Bernhard) were two (2) levels removed from Lemons. Actions of the Panel of the Court of Appeals of Virginia were one (1) level removed from Lemons, although Court of Appeals is in the same building as the Supreme Court of Virginia. Actions of the panel of the Supreme Court of Virginia were zero (0) levels removed from Lemons. Lemons oversaw a culture in Virginia judiciary of secrecy, of not correcting and covering up their mistakes, and of not caring about the constitutional rights of the litigants which ultimately resulted in the violations of the Plaintiff's 14th amendment rights.

Plaintiff alleges that there were eight (8) judges and justices of Virginia judiciary that colluded together and deliberately violated Plaintiff's rights. If any one of Lemons' subordinates are provided Judicial Immunity by this Honorable Court, then it would be

done under the presumption that in violating Plaintiff's 14th amendment rights, Lemons'

subordinate(s) were acting (1) within the scope of the duties of their employment as judges

and justices; and (2) in in execution of the service (i.e., Judicial function) for which the

subordinate was engaged. Lemons is subject to *Respondeat Superior* liability under

Virginia Law. See *Lindsey Parker v. Carilion Clinic, Et. Al., Record No. 170132, Virginia*

*Supreme Court (2018) "In short, "our established test" limits respondeat superior liability*

*to tortious acts performed "within the scope of the duties of the employment and in the*

*execution of the service for which the employee was engaged".*

24. Supreme Court of Virginia is the highest court in the Commonwealth of Virginia which has

the rule-making authority governing the course of appeals and the practice and procedures

used in the courts of the Commonwealth under Article VI, Section 5 of the Constitution of

Virginia and under Virginia Code § 8.01-3. Supreme Court of Virginia is sued for

injunctive relief.

## BACKGROUND AND STATEMENT OF FACTS

### Divorce Case: Hearing in the Circuit Court of Fairfax County (trial court) and Actions Taken by the trial court.

25. Plaintiff Hassan Sultan and Defendant Nosheen Malik were married in 2010. The parties

had two minor children, NZH (born 9/11/2012) and FSH (born 7/2/2016). The parties were

separated in May 2017 and subsequently filed for divorce.

26. The divorce hearing was conducted on February 27, 2019, by Judge Bruce D. White, in the

Circuit Court of Fairfax County.

27. Before the trial, the parties had an agreement on most issues related to child custody, child

support, and spousal support. Some of the parties' agreements were incorporated in the

Final Decree of Divorce, and other issues were not.

28. One of the issues to be decided at trial was the value of Plaintiff's one-man accounting practice, *Reckenen, Inc.,* (Reckenen) under Virginia's equitable distribution statute.

29. At trial, the parties stipulated that the value of Plaintiff's accounting practice, as determined by the court, can be divided equally between parties.

30. The parties did not stipulate that the court could just pick the valuation from one of the experts without making any specific findings of fact.

31. Plaintiff is a CPA and was the only employee of the Reckenen.

32. Plaintiff personally serviced all the clients of the business.

33. Both experts determined that a reasonable salary for someone with Plaintiff's experience and education was $93,900. Plaintiff made considerably less than $93,900 in salary and profits (i.e., total compensation) from Reckenen for several years prior to the divorce action.

34. During the one-year period ended on 9/30/2018, Plaintiff made a salary of $30,000 from the business and a profit of $38,018, totaling $68,018, which is considerably less than the reasonable salary of $93,900 as determined by all experts. Another way to say this is that after adjusting for the reasonable salary of the plaintiff, the business lost money every year. There were no assets of the business besides the skill and relationships of the Plaintiff (i.e., personal goodwill), which generated income for the Plaintiff. More importantly, there were no profits as Plaintiff made less than a reasonable salary in total compensation from Reckenen.

35. The reason why Plaintiff continued to operate his business despite the lack of profits was because he had considerable childcare responsibilities during the weekdays that hindered

his ability to work for someone else. Plaintiff testified to this fact at trial. Further, Plaintiff had serious health issues, which were later diagnosed as long-term Lyme disease.

36. In coming up with the value of Reckenen, the Defendants (Nosheen Malik and/or Nicholas Solan) hired Mark Vogel, CPA (Vogel) and Kirstine Conners, CPA (Conners), as expert witnesses who issued a written report which was admitted into evidence.

37. Vogel and Conners came up with the value of the Plaintiff's accounting practice using three adjustments to the financial statements provided by Plaintiff.

37.1. **Goodwill:** Vogel/Connors determined marital Goodwill of $67,000. In doing so, Conners assumed that Plaintiff would have to sign a non-compete agreement as part of the hypothetical sale of the business to a third party. Connors testified that the business could not be sold without the acceptance of a non-compete agreement from the Plaintiff. In other words, Connors included the value of the Plaintiff's supposed future non-compete agreement as "Goodwill" (i.e., marital property) against well-established Virginia law. Further, there could not be any "Goodwill" attributed to a money losing business because Goodwill is the ability to generate profits and there were no profits as the Plaintiff made less than a reasonable salary. Further, in coming up with the marital Goodwill value, Vogel/Conners used a method that was not allowed under well-established Virginia law.

37.2. **Adjustment to Cash**: Vogel/Connors made an upward adjustment of $20,051 to cash. As a matter of Virginia, other well-established law, and accounting rules, cash cannot have a value other than its stated value. This resulted in double-dipping, which was prohibited under well-established Virginia law.

37.3.     **Prior Distributions as Marital Asset:** Vogel/Connors made an upward

adjustment of $18,534 to Shareholder Receivables by opining that the prior distributions

taken by the Plaintiff from Reckenen were somehow a receivable (i.e., asset) of the

business. As a matter of Virginia law, a prior distribution could not be an asset of the

marriage unless it was specifically determined to be a loan and no such determination

was made by the trail court. Further, if prior distributions were considered a loan from

Reckenen to Plaintiff (i.e., an asset of the business), then as a matter of Virginia law,

those prior distributions must also have been considered a marital liability nullifying

their impact. However, the trial court included these prior distributions in the value of

Reckenen based on the reports and testimony provided by Vogel/Conners. This resulted

in double-dipping, which was specifically prohibited under well-established Virginia

law.

38. The trial judge, Bruce D. White, stated the following in his ruling. Your Plaintiff has

numbered sentences of Judge White's ruling to organize and segment his ruling for

convenience of reference. Below is Judge White's entire ruling as taken from the

transcripts:

38.1.     *As to the business, I will make some comments and give you a few things I wrote
down as being of some significance. The parties have, of course, agreed that once the
Court comes up with an evaluation it will be a 50/50 split, and I appreciate you all
coming up with that stipulation.*

38.2.     *The request for alternate valuation is denied. I find that there is certainly
adequate evidence to say the first and most equitable means of determining this based
upon the evidence before me is to use the hearing of the date of the separation [date of
evidentiary hearing].*

38.3.     *I find that the expert testimony in the case, starting first with Ms. Conners,' I
found her to be a credible witness. I noted that the amended tax returns matched the
documents that she received. Husband's witness, in my view, had no clue whether he
reviewed admitted tax returns or not. It simply tossed out tax return numbers as if he
remembered that was what he reviewed, and I did not find that to be credible at all. I*

{ 12 }

*found that the evaluation of numbers from Ms. Conners were conservative and reasonable.*

38.4.　　*The issue with regards to the non-compete I found her testimony there to be credible, this is as to whether or not anyone would purchase this asset without a non-compete and her assumption and evaluations were that it would not sell if there was a non-compete and that, in fact, if they, given a non-compete, would be something that would be done intentionally to impair the value of the asset.*

38.5.　　*So far, it's goodwill among the things that were somewhat important is that the husband tried to make a case that he has special relationship with all of, with many clients, yet there is no corroboration of that, not even an offering of dates that he might have been to these birthday parties or weddings that he claims were evidence of his strong relationship with the family. I really did not get a sense that there were very many, if any of those occasions. Some of the things that sometime people say generates good will to a person as opposed to a business, I think things like VMI graduates who have a very tight brotherhood of graduates, and if someone was a VMI graduate and my clients go to them, and then he affixed to them certainly because of that, not because they are excellent CPAs of because they service them well. I did not find any evidence of anything like that, and I thought frankly that if the generation of these clients and keeping these clients was based so much on this personal relationship that the husband believes is true, should have been some type of corroboration of some type.*

38.6.　　*As to Mr. Stevenson, expert for the father, he came across to me as an advocate. Some parts of his testimony seemed to be a canned spiel, his testimony. I was troubled by his testimony that the contact lists have no value. He indicates no value, none at all. There are businesses that sell lists of contacts, not even contacts that are nearly as firm as these are that those are legitimate businesspeople. So, contact lists, you end out your business to, invitations to these folks to engage your services, so he gave me no explanation I could come up with as to why in this particular case these contact lists have no value. I did not find that testimony to be credible.*

38.7.　　*His testimony with regards to the way that he used the three methods and gave them each equal weight was troubling to me. In talking about he approaches he used, he talked about the income method. Instead, he gave a great deal of thought as to whether he even used it at all because it really did not seem to be very effective for this particular case, yet after saying he's not sure he would even use it, he gives it a one-third value, the same value he gives to other systems.*

38.8.　　*The only rationale that I could come up with that he would do that is his analysis to me seemed to be resolve-oriented, that may be because to some extent the name of his company is Valuation Services. What they do is provide [bogus] expert testimony.*

38.9.　　*I did not find that same type of situation with Ms. Conners, although she does many of these evaluations, I did not find that type of perceived bias to me.*

38.10.　　*No one mentioned it when talking about the goodwill issue, but I wondered whether or not there is more goodwill, personal goodwill to accompany what would be called Hassan Sultan, CPA as opposed to a company that does business as a corporate name,*

38.11.　　*I don't have it right in front of me, so that was an issue to me that ultimately the parties through their counsel asked me in opening statement to either adopt one of the two experts' testimony or to come up with my own numbers, somewhere in between and*

*on this evidence I find that I can't do that without speculating or without making myself an expert in a field in which I am not an expert. I took a lot of economic courses. I took a lot of accounting courses, but that was decades and decades ago, and it would be improper for me to try to suppose that I might know more than the two experts. So, it will be 50/50 distribution of the business based upon the evaluation without the alternative evaluation date and adopting Ms. Conners' testimony as to value.*

39. The Defendants employed a scheme to get their expert witnesses to provide a bogus expert report without any reasonable basis and then to get the trial judge to make no specific findings of fact by saying he was not qualified to overrule the experts. When the Plaintiff appealed to the Court of Appeals (CAV), the three judge panel of CAV sidelined all issues of law either by ignoring them or by deciding something else that was not raised as an issue by the Plaintiff, and claimed that the remaining issues were issues of fact which could not be disturbed on appeal even when there were no specific findings of fact by the trial court on those issues. The actions of the panel of CAV were deliberately taken to cover up the actions of Judge White which resulted in the violation of Plaintiff's 14th amendment rights.

40. Your Plaintiff will address Judge White's ruling, as quoted in item 38, of this complaint, point by point, to demonstrate how he avoided making any specific findings of fact and to demonstrate how he justified the Defendants' expert's opinion without any reasonable basis for doing so:

   40.1.1. Judge White stated:

   *"I find that the expert testimony in the case starting first with Ms. Conners', I found her to be a credible witness. I noted that the amended tax returns matched the documents that she received. Husband's witness, in my view, had no clue whether he reviewed admitted tax returns or not. It simply tossed out tax return numbers as if he remembered that was what he reviewed, and I did not find that to be credible at all."*

It was undisputed that all experts were provided with the same amended tax returns and financial statements. There was no controversy about the information provided to all experts.

Neither party raised the tax returns provided as an issue because all experts used the same tax returns in coming up with their conclusions. This was an issue raised by Judge White on his own accord in order to avoid making any findings of fact and in order to discredit Plaintiff's expert testimony.

An expert is not required to know whether a tax return is amended or not. A valuation engagement is not an audit of the financial statements or an audit of the accuracy of the tax returns. Tax Returns are used as an input by valuation experts in coming up with their conclusions and both experts used the same tax returns as an input to their respective valuations.

Finally, Judge White's statement: *"It [Plaintiff's expert] simply tossed out tax return numbers as if he remembered that was what he reviewed."* is factually incorrect as nothing was tossed out by the expert in question. He used the tax returns and financial statements as input for his valuation report.

This statement by Judge White quoted above was simply made to attack the credibility of Plaintiff's expert, so Judge White could avoid making any findings of fact.

40.1.2. Judge White stated the following regarding non-compete.

> *"The issue with regards to the non-compete, I found her testimony there to be credible, this is as to whether or not anyone would purchase this asset without a non-compete and her assumption and evaluations were that it would not sell if there was a non-compete and that, in fact if they, given a non-compete, would be something that would be done intentionally to impair the value of the asset."*

This statement by Judge White is the only finding of fact made in his ruling in this case. Specifically, the finding of fact was that Reckenen would not sell absent the acceptance of an agreement not to compete in the future by the Plaintiff. This finding of fact was made to then commit an error of law.

It was well established Virginia law that a party's future earning capacity was his or her personal goodwill, and therefore separate property which could not be divided in a divorce. *See Howell v. Howell, 31 Va. App. 332, 344-345 (2000)* *("In valuing the goodwill of the partnership interest, **courts must take special care not to confuse the owner spouse's personal future earning capacity with practice goodwill** attributable to the law firm in order to avoid **double counting.** "Further, particular care must be given that future earnings capacity and reputation not be confused with professional goodwill."* (Emphasis added).

It is axiomatic that the value of a Plaintiff's agreement not to compete in the future is his future earning capacity, which was his separate property that could not be divided in a divorce proceeding.

Judge White's misrepresentation of the well-established law in Virginia was deliberate and it provided significant aid to the Defendants.

40.1.3. Judge White stated the following:

> *"So far, it's goodwill among the things that were somewhat important is that the husband tried to make a case that he has special relationship with all of, with many clients, yet there is no corroboration of that, not even an offering of dates that he might have been to these birthday parties or weddings that he claims were evidence of his strong relationship with the family. I really did not get a sense that there were very many, if any of those occasions.*
> *Some of the things that sometime people say generates good will to a person as opposed to a business I think things like VMI graduates who*

*have a very tight brotherhood of graduates and if someone was a VMI graduate and my clients go to them and then he affixed to them certainly because of that, not because they are excellent CPAs of because they service them well. I did not find any evidence of anything like that, and I thought frankly that if the generation of these clients and keeping these clients was based so much on this personal relationship that the husband believes is true there should have been some type of corroboration of some type. (Emphasis added)*

Plaintiff stated the following at trial:

*Q. And can you tell us about what kind of relationships you have with your clients?*
*A. I have pretty strong relationships, with my clients. I go to their, their kids' birthdays and I get invited to their marriages and funerals and I go to those. I try to keep close contact with them throughout the year because that keeps them coming back.*
*Q. Okay. So, in the deposition, she [Ms. Conners] had said that you have typical relationships in terms of. "Oh, they only contact you when they need their taxes done." Was she incorrect about that?*
*A. I think it is… my firm is not structured like a retail operation. So, it's not, I am not an HR Bock where people just walk in every year and get their taxes done. These clients are more complicated. They have needs which are a lot more than that. They call me throughout the year, with various tax questions that come up. And I would not characterize it as a sort of a typical storefront retail type of a tax operation.*

It should be mentioned that Plaintiff's above testimony was unrebutted at trial, so it stood on its own and did not need any corroboration.

No issues were raised at trial about the credibility of your Plaintiff. Judge White acknowledged this in his ruling by stating, *"I don't find that the parties are without credibility."*

Judge White was purposefully asking for corroboration at the end of the trial to cast doubts about Plaintiff's unrebutted testimony to decide the issue in favor of the Defendants. How could your Plaintiff provide corroboration at the end of the trial when his testimony was unrebutted during trial?

The bias of Judge White highlighted herein was apparent and purposeful.

40.1.4. Judge White Stated the following:

> *"As to Mr. Stevenson, expert for the father, he came across to me as an advocate. Some parts of his testimony seemed to be a canned spiel, his testimony.* ***I was troubled by his testimony that the contact lists have no value. He indicates no value, none at all. There are businesses that sell lists of contacts, not even contacts that are nearly as firm as these are that those are legitimate business people.*** *So, contact lists, you end out your business to, invitations to these folks to engage your services, so he gave me no explanation I could come up with as to why in this particular case these contact lists have no value. I did not find that testimony to be credible." (Emphasis added)*

The above quoted statement is incorrect and entirely out of context. Mr.

Stephenson came up with goodwill value for the business which included the value of

client lists in his report and in his testimony.

**40.1.5.** Judge White stated the following in his ruling:

> *"In talking about the approaches, he used, he talked about the income method. Instead, he gave a great deal of thought as to* ***whether he even used it at all because it really did not seem to be very effective for this particular case, yet after saying he's not sure he would even use it, he gives it a one-third value,*** *the same value he gives to other systems." (Emphasis added)*

This statement by Judge White is a misrepresentation because Mr.

Stephanson stated the following regarding the Income approach:

> *"I thought long and hard about whether to use the method or not because the company wasn't profitable. It didn't have any earnings. It didn't generate any profits which led me to conclude, well, if it produces zero value by some measure, this enterprise is in effect worth zero. There is a possibility that it is worth zero. There is a possibility that it is not worth anything. And I thought and felt that that was accurate." (Emphasis added)*

Stephanson's statement was, in fact, precisely the opposite of the ruling provided

by Judge White, when he stated that he felt that it was accurate to use the income

approach. Judge White's bias in favor of the Defendants was apparent and was done to favor Defendant Malik. Further, there was no appearance of justice here when Judge White twisted the testimony of a witness in order to reach a pre-determined outcome.

40.1.6. Judge White stated the following:

> *"The only rationale that I could come up with that he would do that is his analysis to me seemed to be resolve-oriented, that may be **because to some extent the name of his company is Valuation Services. What they do is provide [bogus] expert testimony**." (Emphasis Added)*

What does the name of the company that an expert witness works for have to do with the credibility of his testimony? White attacked the character of a witness based on the name of his employer.

Judge White had no firsthand knowledge that Valuation Services, Inc. provided bogus expert testimony. The Virginia Cannons of Judicial Conduct state that "a judge cannot testify as a character witness". It should be clear that Judge White served as a character witness against Mr. Stephanson based on the name of the company that employed him.

If the name of the company i.e., Valuation Services, Inc. was used to discredit Plaintiff's expert, then what about the name of Defendant's expert Conners? If Judge White was acting as an unbiased judge, then shouldn't he also have concluded based on the name of Defendant's expert that Conners is a con artist? The answer should be evident, the name has nothing to do with the credibility of testimony provided by a witness. This is absurdity, pure and simple, which gave no appearance of justice.

Mr. Stephanson's analysis was not resolve oriented. Judge White was attacking the credibility of Stephanson so that he could come up with the reasons to discredit his testimony and reach a predetermined conclusion.

**40.1.7.** Judge White Stated the following:

> *"I did not find that same type of situation with Ms. Conners, although she does many of these evaluations, I did not find that type of perceived bias to me." (Emphasis added)*

It is evident that Judge White acted as a character witness for Conners, which is expressly prohibited by Virginia Cannons of Judicial Conduct.

This conduct by Judge White is particularly troubling to the Plaintiff because Conners stated during her deposition that she had never testified in front of any court before. If Conners' testimony was correct, then Judge White did not know firsthand that Ms. Conners does 'many of these valuations' but injected this in his ruling to create the illusion of credibility.

Conners stated the following in her deposition:

> *Q. And have you testified in court before as an expert?*
> *A. I have not.*

Since this case was Conner's first testimony in front of any court, one can assume that Judge White did not know Ms. Conners in her professional capacity before she testified at trial.

The question then becomes, what justified Judge White's statement quoted above? It should be evident that Judge White's statement was not factually accurate as he had no knowledge of 'many of these valuations' provided by Conners. Further, judge White's statements violated the Virginia Cannons of Judicial Conduct.

Judge White simply stated this to provide more credence to Ms. Conners' testimony despite the incredible nature of her testimony. Plaintiff was entitled to a trial before an unbiased arbitrator of facts, and based on this apparent bias, Plaintiff's due process rights were violated.

40.1.8. Judge White stated:

> *"No one mentioned it when talking about the goodwill issue, but I wondered whether or not there is more goodwill, personal goodwill to accompany what would be called Hassan Sultan, CPA as opposed to a company that does business as a corporate name."*

Judge White was correct in stating that no one brought this particular issue to the trial court's attention because it was not an issue of this trial. Plaintiff was the only employee of the business, which he operated under a corporate name, and through which Plaintiff personally serviced his clients. Further, if judge White wondered about this issue, then he should have provided a ruling on this issue and no ruling was provided. White was simply wondering without reaching a conclusion on this issue as he was finding reasons to justify his ruling that could not be otherwise justified.

These actions by Judge White show bias and predetermination and violated Plaintiff's 14th amendment rights which entitled him to a trial before an unbiased arbitrator of facts.

40.1.9. Judge White stated the following:

> *"I don't have it right in front of me, so that was an issue to me that ultimately the parties through their counsel asked me in opening statement to either adopt one of the two experts' testimony or to come up with my own numbers, somewhere in between and on this evidence I find that I can't do that without speculating or without making myself an expert in a field in which I am not an expert. I took a lot of economic courses. I took a lot of accounting courses, but that was decades and*

*decades ago, and it would be improper for me to try to suppose that I might know more than the two experts. So, it will be 50/50 distribution of the business based upon the evaluation without the alternative evaluation date and adopting Ms. Conners' testimony as to value.*

There were no such stipulations made in the opening statements. After the opening statements, Judge White brought this issue on his own accord by stating the following:

> *THE COURT: All right, do you both agree or let me know if you disagree that the Court's opinion is to either accept one of the expert's testimony or accept the other expert's testimony or the Court would have no basis to simply pick a number in the middle of those as that would be speculating?*
> *Ms. Fayez (Plaintiff's attorney): I believe that the Court is allowed to use a number between, I do believe that the Court is, according to case law, the Court is allowed to use a number that it feels appropriate between zero dollars and whatever the, probably, the highest number that one of the experts used.*
> *THE COURT: So the Court would in essence be deciding neither of the experts was credible and the Court would then pick its own calculation?*
> *Ms. Fayez: I think the Court has the discretion to determine what it believes based on evidence, what you believe the value of the business would be, based on the expert testimony and based on whether or not, who you find to be more credible.*
> *Mr. Solan (Defendant's Attorney): I would agree with her. I think if you simply said in making your determination that I am just simply choosing a number equidistant between the two of the valuations, that might not stand up to muster but as you said, it's kind of a speculative choice. **But if you substantiate that with reference to particular testimony that you heard and particular documents that are in evidence**, I do think you are not constrained only to choose one or the other.*
> *THE COURT: Well, I'll look at your authorities, **but it seems to be that if I find one of the experts to be more credible that the other, then I'll simply pick that expert's testimony and adopt it**...(Emphasis added)*

It is evident that Judge White's questioning and reasoning were to get the Plaintiff to agree that Judge White did not need to do any fact-finding and could pick the valuation of one of the experts on any grounds, reasonable or not.

When the Plaintiff did not agree to it and asked Judge White to make specific findings of fact, he made the following statement *"I don't have it right in front of me, so that was an issue to me that ultimately the parties through their counsel asked me in opening statement to either adopt one of the two experts' testimony or to come up with my own numbers, somewhere in between and on this evidence I find that I can't do that without speculating or without making myself an expert in a field in which I am not an expert." (Emphasis added)*

This statement by Judge White is contrary to the law in Virginia. *See Stratton v. Stratton, 16 Va. App. 878, 883, 433 S.E.2d 920, 923 (1993) "The finder of fact is not required to accept as conclusion the opinion of [any] expert"*

It is evident from Judge White's statement that he believed that he was required to accept the valuation of one of the experts as conclusion. It is also evident from CAV's ruling in Stratton that his belief was incorrect as a matter of law. Plaintiff asserts that Judge White's declaration, prior to hearing any evidence, was against well-established Virginia Law and was deliberately made to reach a pre-determined conclusion.

This statement by Judge White was grounds for recusal. Judge White, however, did not recuse himself even when he himself determined that he was not qualified to make any findings of fact. This allowed him to pick Conners' testimony for whom he himself was a character witness in opposition to Virginia's Cannons of Judicial Conduct.

This statement by Judge White shows that he intended to harm the Plaintiff and violate his 14th Amendment rights.

**40.1.10.** Judge White also allowed both of the Defendants' expert witnesses, Conners and Vogel, to stay in the Courtroom for the entire duration of the trial without any motion by either party. This was done in opposition to Rule 2:615(b) of the Rules of the Supreme Court of Virginia which states:

> *"Where expert witnesses are to testify in the case, the court may, at the request of all parties, allow one expert witness for each party to remain in the courtroom; however, in cases pertaining to the distribution of marital property pursuant to § 20-107.3 or the determination of child or spousal support pursuant to § 20-108.1, the court may, upon motion of any party, allow one expert witness for each party to remain in the courtroom throughout the hearing."*

There was no motion, by either party, to allow both expert witnesses to stay in the courtroom for the entire duration of the trial.

Perhaps this is a fine point, but it shows that Judge White violated Plaintiff's rights to due process and equal treatment and gave unfair advantage to the Defendants as Vogel and Conners were actively assisting the Defendants throughout the trial.

In conclusion, Plaintiff states that the above-mentioned conduct of Judge White depicts that Plaintiff's 14th amendment rights to due process and equal treatment were violated which resulted in the deprivation of his property. Further, Judge White's conduct did not provide an appearance of justice. *See Offutt v. United States, 348 U.S. 11 (1954) "These are subtle matters, for they concern the ingredients of what constitutes justice. Therefore, justice must satisfy the appearance of justice" (emphasis added)*

## Divorce Case: Appeal to the Court of Appeals of Virginia (CAV) and Analysis of CAV's Ruling

41. The divorce case was then appealed to the Court of Appeals of Virginia and was adjudicated upon by a three-judge panel of CAV consisting of Judges Beales, Athey, and Haley. Let's take the three issues raised in Item 37 of this complaint one by one and examine the ruling provided by the panel of CAV in its unpublished-written opinion:

    **41.1.**    **Goodwill:**

        **41.1.1.** At the time of the trial, it was well established Virginia Law that a party's future earning capacity is not a marital asset. It is in fact separate or personal property which is not subject to equitable distribution. This was decided in *Howell v. Howell, 31 Va. App. 332, 344-345 (2000)*, roughly 20 years prior to this case. Howell states:

> *Professional goodwill (also designated as individual, personal, or separate goodwill) is attributable to the individual and is categorized as separate property in a divorce action. Practice goodwill (also designated as business or commercial goodwill) is attributable to the business entity, the professional firm, and may be marital property. The commissioner and the trial court carefully distinguished between these two components and selected a value that was solely attributable to the husband being a partner in Hunton & Williams. It represented the premium due to the husband's association with Hunton & Williams, the economic advantage he enjoyed because he was a partner in that firm. It included no value attributable to him personally, and it did not rely upon any earnings due to the husband's own expertise, reputation, experience, skill, knowledge, or personality. As applied, the discounted future earnings method was not a flawed method of valuation.*
>
> *In valuing the goodwill of the partnership interest, **courts must take special care not to confuse the owner spouse's personal future earning capacity with practice goodwill attributable to the law firm in order to avoid double counting. "Further, particular care must be given that future earnings capacity and reputation not be confused with professional goodwill."** (Emphasis added) Howell v. Howell, 31 Va. App. 332, 344-345 (2000).*

Connors stated in her testimony that Reckenen will not sell without the acceptance of an agreement not-to-compete by the Plaintiff, which equates to Plaintiff's agreement not to work in his profession in the future and to forego those future earnings. It is axiomatic that any value attributed to an agreement not to compete in the future by the Plaintiff is future earning capacity and is therefore separate property not subject to equitable distribution as a matter of well-established Virginia law.

Plaintiff raised this issue in the trial court and with CAV, citing *Howell v. Howell, 31 Va. App. 332, 344-345 (2000)*. Both courts refused to provide a ruling on this issue according to well established Virginia Law. Judge White Stated the following in his ruling:

> *"The issue with regards to non-compete I found her [Defendants' expert] testimony there to be credible, that is as to whether or not anyone would purchase this asset without a non-compete and her assumption and evaluations were that it would not sell if there was a non-compete and that, in fact, if they, given a non-compete, would be something that would be done intentionally to impair the value of the asset."*

The issue of intentionality could not have been reached as a matter of law without first deciding whether value attributable to a non-compete was marital property or separate property.

If an agreement not to compete in the future were marital property, the trial court's statement would be correct, but value attributed to an agreement not to compete in the future is not marital property in Virginia.

If the value of an agreement not to compete in the future was separate property (i.e., future earnings capacity), the trial court's statement was

unequivocally wrong because *Howell v. Howell, 31 Va. App. 332, 344-345 (2000)* clearly states that future earning capacity is separate property and not a marital asset and is therefore not subject to equitable distribution.

This question was then raised with CAV, which again sidetracked this question and refused to provide a ruling on this issue of law raised by the Plaintiff. The three-judge panel stated the following in its un-published written opinion. Your Plaintiff has numbered sentences of the CAV's ruling to organize and segment CAV's rationale for convenience of reference:

41.1.1.1.   First, husband argues about the effect of a non-compete agreement in a hypothetical sale of Reckenen. At the evidentiary hearing, Connors acknowledged that husband indicated to her that he would not sign a non-compete agreement as part of a sale of Reckenen.

41.1.1.2.   Connors also agreed on cross-examination that she would not recommend for a potential buyer to buy Reckenen if husband would not sign a non-compete agreement.

41.1.1.3.   Husband argues that "[t]he value attributable to an asset that is derived from a party entering into a non-competition agreement is that party's separate property. Husband acknowledges in his brief that there is no Virginia case law that requires such a holding.[1]

41.1.1.4.   Consequently, husband also argues that "the entire value of the business is [husband's] personal goodwill and therefore [husband's] separate property for the purposes of equitable distribution, and therefore the trial court erred by finding and holding otherwise."

41.1.1.5.   However, if husband's argument were correct, a party could have a substantial impact on the value of a business for valuation purposes (thus decreasing the marital share, when applicable) simply by stating that he would not agree to a non-compete agreement.

41.1.1.6.   More importantly, nothing in the record shows a pending sale or an actual offer for a purchase of Reckenen. Husband's arguments concerning his unwillingness to agree to sign a non-compete agreement are merely hypothetical.

41.1.1.7.   Furthermore, Connors testified that a seller's willingness to sign a non-compete agreement is not considered as part of the valuation.

---

1 This sentence was footnoted, by CAV, and not included in the body of the ruling. It has been moved to the main body of the text for clarity.

*41.1.1.8. Therefore, the trial court did not err in refusing to consider in its valuation of Reckenen the possible effect of husband's refusal to sign a non-compete agreement based on a hypothetical sale of the business.*

Below is an analysis of CAV's opinion.

**Item 41.1.1.1:** CAV stated the following "*At the evidentiary hearing, Connors* **acknowledged that husband indicated to her that he would not sign a non-** **compete** *agreement as part of a sale of Reckenen.*"

Conners was an expert witness who could only provide her professional opinion as to the valuation of the business. She was not qualified to opine on to the Plaintiff's willingness or unwillingness to sign a non-compete. The 'Designation of Expert Witness', submitted to the trial court by Defendant Malik, stated the following:

> "*COMES NOW Nosheen Malik, by counsel, and designates the following person as expert witness.... Ms. Conners is an expert in the valuation of businesses. The subject matter Ms. Conners is expected to testify to is the value of the portion of Reckenen, Inc. that Plaintiff owns, and to the value of the marital portion of that interest.... The facts and opinions which form the grounds and basis for those valuations are stated in the attached report, which is hereby incorporated by reference.*" (Emphasis added) (App. p. 3)

It is evident that Defendant Malik's designation did not state that Conners will be testifying as to Plaintiff's willingness or unwillingness to sign a non-compete. She was designated as an expert witness who could only testify to her opinion as to the value of Reckenen, nothing more. At trial Conners stated the following:

> *Q. So he [Plaintiff] mentioned to you his belief that he'd be unwilling to sign a non-compete?*
> *A. Yes*

Conners testimony was hearsay. Plaintiff was available in the courtroom to answer this question, and no-one asked this question because your Plaintiff never made such a statement to Ms. Conners. There was only a hypothetical conversation about the value of non-compete between two professionals i.e., Plaintiff (who was a CPA) and Conners (who is a CPA, and a valuation expert) nothing more.

It is evident that Conners overstepped the bounds of her designation and testified to the husband's unwillingness to sign a non-compete. It is also evident that Solan asked her a question which was outside of her designation as an expert witness which Solan himself submitted to the trail court. Further, it is evident that CAV relied on Conners statement to justify its ruling. All of them, Conners, Solan, CAV overstepped their respective bounds and were acting together to violate plaintiff's 14th amendment rights.

Finally, and more importantly, Plaintiff's willingness or unwillingness to sign a non-compete had no bearing on the issue Plaintiff raised with CAV. The question raised with CAV was whether value attributable to an agreement not to complete in the future is separate or personal property as a matter of law cited above. As stated previously, the question of willingness or un-willingness to sign a non-complete is completely irrelevant.

**Item 41.1.1.2** is factual and correct.

Conners testified that she would not recommend for a hypothetical buyer to buy Reckenen in the absence of a non-competition agreement from the Plaintiff.

The trial court understood this statement by Conners to mean that the business will not sell absent the acceptance of a non-competition agreement from the appellant by stating:

> *"The issue with regards to non-compete, I found her [Appellee's expert] testimony there to be credible, that is as to whether or not anyone would purchase this asset without a non-compete and **her assumptions and evaluations were that it would not sell if there was [not] a non-compete and that, in fact, if they, given a non-compete, would be something that would be done intentionally to impair the value of the asset"***

If an asset (i.e., Goodwill, hypothetical value of client list) could not be sold without an agreement not to compete by the Plaintiff, then the asset had no value unless the Plaintiff agreed not to compete in the future. All the value of the Goodwill asset was dependent on the Plaintiff agreeing to a non-compete which is personal property.

**Item 41.1.1.3:** The panel of CAV acknowledged the question of law by stating *"Husband argues "[t]he value attributable to an asset that is derived from a party entering into a non-competition agreement is that party's separate property"*. This was the precise question that was before the panel of CAV as a question of law and required a de novo review (*See Navas v. Navas, 43 Va. App. 484, 487 (2004) "This Court reviews the circuit court's legal conclusions de novo"*) and this is the question that the panel of CAV refused to answer, de novo or otherwise.

CAV then stated the following to sidetrack this question *"Husband acknowledges in his brief that there is no Virginia case law that requires such a holding"*.

The above statement from the panel of CAV is proof positive that CAV viewed this question as an issue of law which required a de novo review.

Plaintiff did not make any concession of law on this issue and your Plaintiff made that abundantly clear to CAV and the Supreme Court of Virginia (SCV) in various pleadings and oral argument.

Virginia case law is clear that *"a party can concede the facts but cannot concede the law" (Emphasis added), Cofield v. Nuckles, 239 Va. 186, 387 S.E.2d 493 (Va. 1990)2.* Plaintiff not only did not make such a concession on an error of law, <u>nor could Plaintiff have made such a concession according to Virginia law.</u>

The same penal of CAV, consisting of Beales, Athey, and Haley heard oral argument in *Neelab Hashmi Ahmedzi v. Commonwealth of Virginia, Record No 0384-19-4, (2020)* on the same day as the Plaintiff's case and cited *Cofield v. Nuckles, 239 Va. 186, 387 S.E.2d 493 (Va. 1990)* in their written unpublished opinion to reach the conclusion that despite the fact that the Commonwealth conceded an issue of law it requires a de novo review quoting *Logan v. Commonwealth, 47 Va. App, 168, 172 (2005) "Because the **law applies to all alike,** it cannot be subordinated to the private opinion of litigants".* If the law applied to all alike, then how did it not apply in Plaintiff's case?

It is evident that CAV's panel stated this in its ruling because it did not want to provide a ruling on this issue of law as the panel was discriminating against the

---

[2] This case has at least been cited by 37 cases according to casetext.com, which would make this one of the most cited decisions in Virginia.

Plaintiff in favor of the Defendants, which constitutes a state action. Further, it was intentionally done to cover up the actions of Defendant White.

**Item 41.1.1.5:** The panel of CAV brought up a tangential issue by stating *"However, if husband's argument were correct, a party could have a substantial impact on the value of a business for valuation purposes (thus decreasing the marital share, when applicable) simply by stating that he would not agree to a non-compete agreement".*

In response, Plaintiff stated to CAV as follows:

> *"whether he is willing or unwilling to sign a non-competition agreement has no bearing on the question that is being asked. It must first be decided whether the value attributable to a party having to agree to a non-competition agreement is that party personal goodwill (or separate property) or not. If it is considered personal goodwill, the issue of willingness or lack of willingness to sign a non-compete is moot. If it is considered marital property, then it would be a fair argument. However, this argument cannot be made before deciding whether the value attributable to a party having to sign a non-compete is personal goodwill or not."*

CAV provided no answer either in its initial ruling or upon a motion to reconsider/re-hear which was intentionally done to continue to violate plaintiff's rights and to cover up the actions of Defendant White.

**Item 41.1.1.6:** CAV stated that the Appellant's argument concerning his unwillingness to agree to sign a non-compete agreement was merely hypothetical.

It must be reiterated that Plaintiff's willingness or unwillingness to sign a non-compete had no bearing on the question that was before CAV. Further, the value attributed to Plaintiff's agreement not-to-compete was included in marital

property subject to equitable distribution. If CAV included it in the marital property, then it could not hold that its inclusion was hypothetical. This defies any logic.

The entire valuation (which included the value of the Plaintiff's agreement not to compete) was hypothetical. It should be stated that the value attributed to the goodwill of Reckenen was derived by Conners using a hypothetical rule of thumb[3] of one-times revenue. CAV correctly pointed out that there was nothing in the record that showed a *'pending sale or an actual offer for purchase of Reckenen'*.

It is evident that CAV held that the value of Reckenen was hypothetical. If CAV held that only Goodwill was hypothetical and thus not probative, then CAV must have also held that the whole (i.e., value of Reckenen) is hypothetical and not probative.

A consequence of CAV's holding in Plaintiff's case would be that since almost all business valuations under equitable distribution are hypothetical, trial courts in Virginia can never assign a value to a business without a pending sale or actual offer for purchase but that is not the law in Virginia. This was precisely why an unpublished opinion was issued.

CAV's ruling in Plaintiff's case conflicted with its prior holdings in nearly all business valuation cases under equitable distribution because almost all business valuations, which include the value of goodwill, done under equitable distribution

---

[3] Connors stated at trial "That is because it is widely known within the accounting industry that the client lists sell for one time revenue". She did not provide any reference to where such a rule of thumb exists. This was also acknowledged by Judge Beales of CAV during oral argument. Audio recording of the oral argument is on CAV's website. Needless to say, her basis for valuing the entire business were hypothetical.

are hypothetical. *See Bosserman v. Bosserman, 9 Va. App. 1, 384 S.E.2d 104 "The goal is to arrive at a fair market value for a stock for which there is no market."*

Let's examine why CAV made this evidently wrong statement *"husband's [Plaintiff's] arguments concerning his unwillingness to agree to sign a non-compete agreement are merely hypothetical".*

In *Cirrito v. Cirrito, Record No 3248-03-4, (2004)*, which is a published opinion of CAV, CAV held *"The non-compete agreement contingent upon forbearance of employment, **is analogous to a severance package**. Severance pays contemplate **a salary substitute for future lost wages**. Much like severance pay, the one million dollars replaced lost earnings during the period of time the husband was not in competition with Telco" (Emphasis added).*

In Cerrito, it was held that the value attributed to a non-compete agreement was marital property as it was earned during the marriage, despite the fact that the underlying business asset that was sold was separate property as it was acquired prior to marriage and the agreement not to compete was executed prior to marriage. The converse of this must also be true that the value attributed to an agreement not to compete in the future at the end of marriage is Plaintiff's separate property as it would be a substitute for Plaintiff not working in his field in the future. CAV and trial court clearly included the value of **the non-compete as marital property in Plaintiff's case so how could CAV then say that the inclusion was hypothetical?** CAV's statement calling Plaintiff's argument as hypothetical was made to confuse the issue and not follow its own precedent of *Cirrito* and well-established Virginia law.

Also see *Luczkovich v. Luczkovich, 26 Va. App. 702,496 S.E. 2d 157 (1998)*

*"the touchstone . . . is whether the severance package was intended to compensate the employee for efforts made during the marriage or to replace post-separation earnings."* where husband's severance pay negotiated after separation was not considered marital property as it was determined that the severance package was intended to replace post-separation earnings. There is a whole litany of cases that follow the logic of Cirrito and Luczkovich that non-complete agreements are analogous to severance pay and severance pay for not-competing in the future after separation is separate property. E.g., *Ash v. Ash, Record No. 1943-03-2 (Va. Ct. App. Mar. 23, 2004), Long v. Long, Record No. 1723-98-2 (Va. Ct. App. Oct. 5, 1999)*

It is evident that CAV deliberately inserted this 'hypothetical' language in order to deceive the Plaintiff and cover up the actions of Defendant White.

**Item 41.1.1.7:** The language was misleading and needed clarification.

Conners stated that the Appellant's unwillingness to sign a non-compete has no impact on her valuation. What Conner's position meant was the value attributable to the non-compete agreement (i.e., separate property) was included in Conners' conclusion of value.

As discussed above, the trial court understood Conners' expert opinion to be dispositive of this issue.

It should be evident that both the trial court and the panel of CAV were biased in the favor of the Defendant(s) and refused to classify Plaintiff's separate property as such as required by Virginia Code § 20-107.3 and case law.

Based on the fact that the trial court and CAV did not follow Virginia's law regarding this issue, it was not adjudicated according to the controlling laws in Virginia.

This un-litigated issue is not subject to 'issue preclusion' in this federal Court. In so far as there is such a law in Virginia that allows distribution of a party's personal property (i.e., skill, experience, future agreements not to compete, relationships etc.) under the guise of Equitable Distribution, Plaintiff alleges that such a law is unconstitutional.

The state court records clearly show that the state court actors conspired together to provide significant assistance to the Defendants in order to cover up the actions of Defendant White.

41.1.2. In coming up with the value of the Goodwill, the Defendants' expert issued an opinion using an intrinsic value standard as defined in Virginia Law, and in doing so stated as follows in their report:

> *The standard of value used in our valuation of Reckenen, Inc. is Intrinsic Value.* ***For marital dissolution in the Commonwealth of Virginia, the applicable standard of value is intrinsic value, as defined in Howell v. Howell, 31 Va. App. 332, 523 S.E.2d 514 (2000) and Bosserman v. Bosserman, 9 Va. App. I, 384 S.E.2d 104 (1989). (Emphasis added)***

In Bosserman, Virginia Court of Appeals stated the following:

> *"[M]ost experts and courts have used the **IRS's Revenue Ruling 59-60 as the guide in valuing the close corporation**. The goal is to arrive at a fair market value for a stock for which there is no market. To do this, the IRS recommends that 'all available financial data, as well as all relevant factors affecting the fair market value, should be considered...' Among the factors listed in the Ruling as 'fundamental and requir[ing] careful analysis' are the history of the firm, the nature of the company, the outlook for the industry, the book value of the stock, the size of the block to be valued, the earnings and dividend paying capacities of the company, and the existence of goodwill or other intangible assets. **Generally, greater weight will be given to earnings factors for those companies that sell products or services**, and to asset values for investment or holding companies" (internal citation omitted) (emphasis added) (Bosserman v. Bosserman, 9 Va. App. 1, 384 S.E.2d 104 (1989))*

It must be assumed that since the Defendants' experts reference Howell and Bosserman in their reports, they would be aware of the guidance provided in these cases (and IRS Revenue Ruling 59-60) to give greater weight to earnings factors for companies that provide services.

Defendants' experts gave no weight to the Capitalization of Earnings method (Income Approach) because it resulted in no goodwill value. Vogel and Conners stated in their report *"The adjusted net income of Reckenen, Inc. was negative for the periods we analyzed, and therefore we were not able to perform an income approach"*. This failure to give weight to the Income Approach was done in opposition to well-established Virginia Law that even the defense's own experts cited as the basis for their opinion.

The trial court did not provide any finding of fact on this issue in its ruling or in response to a *'Motion to Reconsider'*.

After seeing the complete disregard of any case law by the trial court, Plaintiff filed a 'Motion to Issue Stock of Reckenen, Inc. to Wife in Lieu of

Monetary Award' asking Judge White to give the entire stock of Reckenen to the wife as the Plaintiff sees no intrinsic worth to owning a money losing one-man accounting practice where he made less than a market salary. *See Howell v. Howell, 31 Va. App. 332, 523 S.E.2d 514 (2000) "Intrinsic value is a very **subjective concept that looks to the worth of the property to the parties**. The methods of valuation must take into consideration the **parties themselves and the different situations in which they exist**" (emphasis added)*

The trial court rejected the motion without providing any reasoning. This argument of intrinsic worth to Plaintiff was also raised with CAV and it also sidelined this issue without providing any analysis. It should be evident that the worth of the property to the party (i.e., Plaintiff) was not considered, which is the law in Virginia.

Plaintiff appealed this issue of no weightage given to Income Approach to the CAV asking the court to correct the error of law. CAV dismissed Plaintiff's argument stating that it is not an issue of law, but an issue of fact and the trial court relied on credible evidence in the record. However, the trial court did not make any factual findings on this issue. The opinion of the Defendants' expert is clearly against the guidance provided in *Bosserman*, while they stated in their report that they followed the guidance provided in *Bosserman* and *Howell*.

The law in Virginia is that the income approach should be given greater weight for companies which sell products or services as stated in *Bosserman*. This criterion for business valuation was also confirmed in *Collins v. Collins, Va., Record No 0862-12-4 (2013) "**In Bosserman, we approved the use of the factors outlined in***

*Internal Revenue Service Ruling 59-60*, *as a guide in the business valuation process…. **Generally, greater weight will be given to earnings factors for those companies that sell products or services**, and to asset values for investment or holding companies…." (Emphasis added)*

The language of *"Generally, greater weight…"* means that the benchmark treatment in Virginia is to give greater weight to earnings factors for services businesses. If the benchmark treatment is not followed, then reasoning must have been provided why the benchmark treatment was not followed. What was so special about Plaintiff's one-man accounting practice that produced less than market total compensation for the Plaintiff that required deviation from the benchmark treatment? No such reasoning was provided by the trial court or by CAV.

If the factors outlined in IRS revenue Ruling 59-60 were approved and therefore are the law of Virginia, then CAV's refusal is a refusal to follow Virginia's law which is a due process and an equal protection issue.

If IRS Revenue Ruling 59-60 is not the law in Virginia, then it is Plaintiff's contention that the law of Virginia is unconstitutional, arbitrary, and capricious.

The trial court was mandated to make a finding of fact as to what method/factors it used in coming up with the goodwill value of a money loosing one-man accounting practice and why the valuation of goodwill was reasonable.

The trial court did not make any such findings of fact and CAV did not explain why trial court's refusal to follow the benchmark treatment was reasonable, which is a deprivation of due process and equal treatment of law issue which prejudiced Plaintiff.

41.1.3. To come up with the value of goodwill of Reckenen, the Defendant's experts, Vogel and Conners, determined the value of goodwill using a one times revenue rule of thumb, stating in their report:

> *"Accounting firms are regularly bought and sold for their client lists for an average of one times revenue"*

Conners also stated in her testimony:

> *"That is because it is very widely known within the accounting industry that the client lists sell for approximately one times revenue."*

Conners also testified that Reckenen was the first accounting firm that she had ever valued. If Reckenen was the very first valuation of an accounting firm by Conners then how she knew that accounting firms are valued at one time revenue. If it was a well-known fact, there should have been some citation as to where does this 'rule of thumb' exists, and none was provided.

Conners also pointed to Deal Stat dataset (which is a database of information about various sales of private companies). However, she stated in her report that she did not rely on the deal stat data stating:

> *"The information from the guideline transaction method provides useful benchmarking information. However, the underlying factors behind each transaction are unknown, and therefore, may be affected by strategic motivation or other factors that are not indicative of intrinsic value."*

If the deal stat data (data of sales of accounting firms) was not indicative of intrinsic value, then how was Conner's own rule of thumb of one-time revenue (also derived from sales data) indicative of intrinsic value? Both the rule of thumb and deal state data were based on sales data.

Conners (and Vogel) wrote the expert witness report and testified in this manner to avoid the question of non-compete as all (or a vast majority) of the sales transactions in deal stat dataset had non-competes associated with them.

The record reveals that the trial court made no findings of fact on this issue.

Plaintiff raised these issues in the appeal with CAV. The question to the CAV was how was Conners use of a rule of thumb probative evidence? *("The trial court erred in accepting as part of its valuation of Reckenen, Inc., Appellee's expert's un-probative adjustment to Intangible Assets (i.e., Goodwill) of $67,000")*

CAV provided no reasoning or basis for its opinion stating the use of a rule of thumb was an issue of fact which was decided by the trial court. However, the trial court did not make any specific finding of fact on this issue.

If CAV states that a matter is an issue of fact, then there must be an actual finding of fact by the trial court. Absent, an actual finding of fact by the trial court, CAV must have remanded the case back to the trial court for it to determine this issue of fact. Absent a remand, the issue required a de novo review from CAV. A de novo review was not performed, by CAV.

Lastly and most importantly, rules of thumb are not probative as a matter of law in Virginia. See *W. Ref. Yorktown, Inc. v. Cnty. of York, 292 Va. 804, 793 S.E.2d 777 (Va. 2016)* **"We have said frequently that values are matters of opinion, to which no rule of thumb can be applied."** *(Emphasis added), quoting Skyline Swannanoa v. Nelson County, 186 Va. 878, 44 S.E.2d 437 (Va. 1947).* CAV refused to follow Virginia's law in order to help Defendant Malik and to cover up

the actions of defendant White. Needless to say, this is a violation of Plaintiff's 14th amendment guarantees.

41.1.4. Vogel and Conners also determined that 30% of the value of the total goodwill was personal (i.e., separate property) and 70% of the value of the total goodwill is attributable to business (i.e., marital property).

Conners and Vogel did not provide, in their expert report, any factors that were considered in order to come up with this conclusion of 30% separate goodwill and 70% marital goodwill. This was Conners' own 'rule of thumb'. Typically, the 'rule of thumb' that is used in such situations is 70% separate and 30% marital which is the inverse of the 'rule of thumb' used by Conners. Regardless 'rules of thumb' are not probative according to Virginia's law. See *W. Ref. Yorktown, Inc. v. Cnty. of York, 292 Va. 804, 793 S.E.2d 777 (Va. 2016)* ***"We have said frequently that values are matters of opinion, to which no rule of thumb can be applied."***

Conners stated in her report that she based this allocation on her "experience, knowledge, and professional judgement". Conners also testified that Reckenen is the first accounting firm that she has ever valued. The question then became what were the basis of her professional judgement?

At trial, Conners was asked about which factors she considered in coming up with the allocation of 30% to separate property and 70% to marital property. During her testimony, she stated that she only considered the following three factors:

1) Conners stated *"there is less personal goodwill because there are numerous other public accounting firms or CPAs in the marketplace that can provide the same services that Mr. Sutan [Plaintiff] provides. "*. This statement begs the question, if many other firms provide the same services as the Plaintiff, why would the clients hire the Plaintiff over other firms?

The answer is evident and apparent, it was because the Plaintiff had personal relationships, skills, and traits that would point toward personal goodwill (i.e., separate property).

2) Conners also stated that because Reckenen operates out of a shared office space (Plaintiff rented a small desk in a shared office space, not even a separate room), she, therefore concluded it is more of a factor of enterprise goodwill.

Conners did not explain why a one-man accounting firm that operates out of a desk in a shared office space would be uniquely attractive to existing or potential clients.

In the normal world, having nice office facilities is viewed by the clients as more attractive and indicative of more enterprise goodwill, the converse is true also.

How is having less attractive office space indicative of more enterprise (i.e., marital) goodwill? It clearly is not. The reason why your Plaintiff was able to attract and retain clients was due to his personal traits, skills, and relationships.

As such this factor lends itself to personal goodwill (i.e., separate property). It is evident from the record that Conners was deceiving the court.

3) Conners also stated that Reckenen has recurring revenue. This begged the question that even if a business has recurring revenue, why do the clients keep coming back to the business on a periodic basis. Since the Plaintiff was the only employee of the practice, Plaintiff was the reason why the clients kept coming back. Plaintiff personally serviced all the clients.

There were no other reasons provided by Conners. The trial court deliberately did not make a specific finding of fact on this issue of allocation.

This issue of allocation was then raised with the CAV, which once again pointed to the trial court and stated the issue of allocation was decided by the trier of facts.

If CAV said that something is an issue of fact, then there must be an actual finding of fact by the trial court. Absent, an actual finding of fact by the trial court, CAV must have remanded the case back to the trial court for it to determine this issue of fact. Absent that, the issue required a de novo review. No, de novo review was provided because 'rules of thumb' are not probative under well-established Virginia law cited above.

As far as the issue of goodwill is concerned under existing Virginia law:

1)- there could not be any goodwill if income-based factors (i.e., Income Approach, Capitalization of Earnings) as prescribed in Virginia's Law were used. *(See Bosserman v. Bosserman, 9 Va. App. 1, 384 S.E.2d 104 (1989), Collins v. Collins, Va., Record No 0862-12-4 (2013))*

2)-The goodwill that was determined was all based on the fact that the Plaintiff would be required to sign a non-compete in a hypothetical sale, which according to existing Virginia law was separate property *(See Howell v. Howell, 31 Va. App. 332, 344-345 (2000))*.

3)- The goodwill value was not probative because Conners based it on an imaginary rule of thumb and had never before performed a valuation of an accounting firm. Further, 'rules of thumb' are not probative in Virginia as a matter of well-established law.

4) the allocation of goodwill between personal and enterprise had no reasonable basis and was not probative as it was determined based on an arbitrary and baseless 'rule of thumb'. Further, 'rules of thumb' are not probative in Virginia as a matter of well-established Virginia law.

In total, the issue of Goodwill was not decided by the trial court based on well-established law in Virginia, any logic, rules of accounting, or business valuation.

Because Virginia courts did not adjudicate these issues according to the laws in Virginia, there cannot be any issue preclusion in this case. Further, Plaintiff challenges the constitutionality of the ruling provided by Virginia courts.

**41.2.**    **Adjustment to Cash:**  Vogel and Conners made an upward adjustment to cash of $20,051 stated on the balance sheet of Reckenen.

The balance sheet provided to both experts had a stated value of cash of $8,832 on September 30, 2018 (valuation date). In the report, Vogel and Conners adjusted the amount

of cash to $28,883 (an upward adjustment of $20,051) stating "Adjusted to match September 30, 2018, bank reconciliation".

The adjustment to cash was baseless and without merit due to the following reasons:

1) A proper reconciliation, reconciling to the stated value of $8,832 on the balance sheet was provided by Plaintiff to Conners. This fact was confirmed by Conners during her testimony.

2) Bank reconciliation is a sub-schedule of the balance sheet. There is no accounting or valuation principle that allows the experts to adjust the stated value of cash on the balance sheet to match with the bank reconciliation because bank reconciliation is done to adjust the timing differences between checks received and not deposited and liabilities paid and not presented to the bank, amongst other things.

3) A bank reconciliation compares a company's records to those of its bank to see if there are any timing differences between these two sets of records for the company's cash transactions. For example, when a company issues a check to pay its liabilities, e.g., to vendors or employees, the check is recorded on the company's books, i.e., balance sheet but it would not be recorded in the bank statement until the company presents the check to the bank. A bank reconciliation adjusts for the timing differences between the issuance of the check and the encashment of the check(s). Once a company has written a check of some amount to pay off its liabilities (e.g., vendors or employees), it has relinquished its right to a similar amount from its bank balance. It is axiomatic that the bank balance stated on the company's balance sheet is always accurate as it has the most up-to-date information.

4) Accounting is a perfect science that relies on a double-entry system. In accounting every entry has a debit and a corresponding credit, as illustrated by the following diagram:

| Accounting Equation | | | | | | | |
|---|---|---|---|---|---|---|---|
| Assets | | = | Liabilities | | + | Equity | |
| Debits | Credits | | Debits | Credits | | Debits | Credits |
| ⬆ | ⬇ | | ⬇ | ⬆ | | ⬇ | ⬆ |
| Increase | Decrease | | Decrease | Increase | | Decrease | Increase |

Let's consider a trivial example to illustrate the concept using the amounts of this case for ease of understanding. The illustration is based on the Generally Accepted Accounting Principles (GAAP). Let's assume that the company had only one liability amount due to a vendor of $20,051 and had cash in its bank of $28,883 and no other assets or liabilities. Its balance sheet would have the following amounts:

| ASSETS: | |
|---|---|
| Cash in Bank | $28,883 |
| **TOTAL ASSETS** | **$28,883** |
| | |
| **LIABILITIES AND EQUITY** | |
| Vendor Liability | $20,051 |
| Net Assets (i.e., the difference between total assets and total liabilities) | $8,832 |
| **TOTAL LIABILITIES AND EQUITY** | **$28,883** |

When the company writes a check of $20,051 to pay its vendor, it will debit (or decrease) the 'Vendor Liability' by $20,051 and credit (or decrease) the 'Cash in Bank' for $20,051 which results in a balance sheet that will have the following amounts:

| ASSETS: | |
|---|---|
| Cash in bank | $8,832 |

| TOTAL ASSETS | $8,882 |
| --- | --- |
| | |
| **LIABILITIES AND EQUITY** | |
| Vendor Liability | $0 |
| Net Assets (i.e., the difference between total assets and total liabilities) | $8,832 |
| **TOTAL LIABILITIES AND EQUITY** | **$28,883** |

After the recordation of this transaction the 'Cash in Bank' decreased to $8,832 and 'Vendor Liability' decreased to $0. There is no effect on 'Net Assets' which remained constant at $8,832. The reason for no change in 'Net Assets' is because that cash, i.e., an asset, was used, or decreased, to pay off, or decrease, the liability. Based on the double-entry system the net effect is $0.

Until the check written by the company is presented by the vendor to its bank, the bank will show a balance of $28,883, which will differ from the balance of $8,832 on the Balance Sheet. A Bank Reconciliation is a subordinate schedule of the Balance Sheet that simply reconciles this timing difference. This difference between the balance per Balance Sheet and balance per Bank Reconciliation (or bank statement) would go away in the future once the vendor cashes the check.

Then comes Conners and Vogel, valuation experts, and increase the 'Cash in Bank' back to the amount of $28,883 (through an upward adjustment of $20,051) stating that they adjusted it to match the bank reconciliation. Vogel and Conners did not restore (or increase) the liability that was paid (and reduced in the balance sheet) by the company with this cash. Essentially, only debiting (or increasing) cash but not crediting (or increasing/restoring) the 'Vendor Liability' that was paid with this cash. Remember accounting is a double-entry system, she violated the basic rules of

accounting by only making one side of the entry and not the other side. This kind of adjustment results in the following Balance Sheet:

| ASSETS: | |
|---|---|
| Cash in bank | $28,883 |
| **TOTAL ASSETS** | **$28,883** |
| | |
| **LIABILITIES AND EQUITY** | |
| Vendor Liability | $0 |
| Net Assets (calculated as the difference between total assets and total liabilities) | $28,883 |
| **TOTAL LIABILITIES AND EQUITY** | **$28,883** |

You will notice that the Net Assets of the company increased from $8,832 to $28,883 as a result of such an adjustment. Voilà, this resulted in the creation of $20,051 of additional value. Conners and Vogel, as a matter of science (i.e., GAAP), could not have honestly made such an adjustment because it constituted double-dipping against the Plaintiff (*See Garza v. Garza, Va. App. Record No. 1286-18-4, 2018*)[4].

Conners stated that she adjusted cash to match the 'bank reconciliation' and not the 'bank statement.' This subtle distinction is important because the 2nd bank reconciliation that was provided to Conners matched with the balance sheet (which is a subordinate schedule, and it reconciled to the balance on the balance sheet, this is precisely why she asked for the corrected bank reconciliation) and she testified that the 2nd bank reconciliation matched with the balance sheet. However, she proceeded to make the upward adjustment to cash anyway. For this reason, she lied under oath.

---

[4] Plaintiff has specifically cited to this Court an unpublished opinion to prove that the law against double dipping is so firm that CAV did not even bother to issue a published opinion. In other words, everybody knows this.

The trial court made no findings of fact on this issue and CAV ruled that it was an issue of fact determined by the trial court. If CAV's ruling states that something is an issue of fact, then there must be an actual finding of fact by the trial court. Absent, an actual finding of fact by the trial court, the issue either required a remand back to the trial court or it required a de novo review by CAV. CAV did not provide a de novo review on this issue or issue a remand.

Below is CAV's ruling regarding this assignment of error[5]. Plaintiff has numbered sentences of the panel's ruling to organize and segment the panel's rationale for convenience of reference in his argument:

41.2.1. *In his third [and fifth] assignments of error, husband argues that the trial court erred in accepting Connors's accounting of assets in a manner contrary to Reckenen's accounting.*

41.2.2. *He argues that because Reckenen used an accrual basis of accounting, Reckenen's stated cash of $8,832 should have been relied upon rather than $28,883. Husband contests Connors's "upward adjustment to cash of $20,051."*

41.2.3. *Husband initially provided to Connors a Reckenen Inc. balance sheet that showed Reckenen had $8,832 in cash on September 30, 2018. A bank statement for that time period, however, showed $28,883 in Reckenen's account.*

41.2.4. *Connors testified that, when she "noted that the bank reconciliation did not match," she "inquired of [husband], and then he emailed the bank reconciliation that did match" the amount from the bank statement.*

41.2.5. *Connors's report that was admitted into evidence included in its valuation the $28,883 in cash, noting an upward adjustment of $20,051 from the $8,832 showed by Reckenen's first accounting.*

41.2.6. *It was not plainly wrong for the trial court (or without credible evidence in the record for the fact finder) to rely on Connors's use of a bank statement and updated reconciliation provided by husband – rather than on the initially provided balance sheet.*

**Items 41.2.1-5** are partially complete and misleading statements of fact and Item 36.2.6 is a conclusion.

---

[5] The ruling does not address each assignment of error separately stating, "For the purpose of organization, we address related assignments of error together."

CAV failed to provide any analysis as to why the trial court's ruling was not plainly wrong. For reasons stated herein, CAV had the mandatory obligation to either remand the case back to the trial court to make a finding of fact on this issue or provide a de novo review. CAV provided neither which is a violation of Plaintiff's 14th Amendment rights.

**Item 41.2.6** is a conclusion. The statement of CAV in Item 30.2.6 that *"It was not plainly wrong for the trial court (...) to rely on Conner's use of **bank statement**"* (emphasis added, text in parentheses omitted) has no evidentiary basis.

It is a matter of undisputed record that Conners never stated that she matched the amount on the balance sheet to the amount on the 'bank statement'. Conners stated instead that she matched the amount on the balance sheet to the amount on the 'bank reconciliation' which she could not have done as described earlier.

CAV twisted the testimony of Ms. Conners to state it was matched to 'bank statement', when it could not find that it was proper to match with the 'bank reconciliation'.

The Defendant's attorney Andrew P. Hoffman also stated during oral argument the balance was adjusted to the 'bank statement' to confuse CAV and CAV was confused, whether intentionally or otherwise.

CAV did not provide any analysis and jumped from statements of facts to a conclusion without providing why the conclusion was justified and not considered double-dipping which is prohibited by Virginia Law *(See Garza v. Garza, Va. App. Record No. 1286-18-4, 2018).*

—

If Virginia's law allows double dipping, Plaintiff asserts that such a law is unconstitutional. Virginia's courts do not have issue preclusion on this double-dipping issue because this issue was not decided by the trial court or by CAV in the underlying case based on well-established Virginia law.

41.3.    **Prior Distributions as marital asset:** Vogel/Connors made an upward adjustment of $18,534 to Shareholder Receivables and opining that the prior distributions taken by the Plaintiff from Reckenen were somehow a receivable (i.e., an asset) of the business from the Plaintiff.

As a matter of Virginia law, a prior distribution could not be an asset of the Reckenen unless it is determined to be a loan and no evidence existed for it to be a loan. Further, the trial court did not say it was a loan.

If a prior distribution were considered to be a loan from Reckenen to the Plaintiff, then as a matter of Virginia law it is also a marital liability nullifying its impact. *See Virginia Code § 20-107.3 (A) (5) (ii) "Marital Debt is .... All debt incurred in either party's name after the date of the marriage and before the date of the last separation of the parties.*

However, the trial court included the prior distributions in the value of Reckenen (as an asset of marriage) and not as a liability of marriage. This is double dipping which was prohibited by well-established Virginia law. *See Garza v. Garza, Va. App. Record No. 1286-18-4, 2018.*

Both of these issues were then raised with the CAV by the Plaintiff stating:

> "As of September 30, 2018, there was an amount of $18,534 which represented prior distributions from Reckenen, Inc. to the Appellant that had not been reported as dividends to the IRS as of that date (App. p. 35, note 8 and 10). Ms. Connors added this amount to the value of the Reckenen, Inc.

*considering it a debt owed to Reckenen, Inc. by the Appellant. It is submitted that this is a reversible error due to the following reasons:*

1) *This is a transaction between the Appellant (as debtor) and the Appellant (as owner) and should be eliminated from any calculations of the value of Reckenen, Inc. (App. p. 220)*
2) *Reckenen, Inc. will have to pay tax on these distributions in the near future. This is, in fact, a liability of the business and not an asset and should be treated as such.*
3) *Since the amount of these un-reported distributions was treated as a debt to the Reckenen, Inc. and was, therefore, used to increase the valuation of Reckenen, Inc., then such a debt should have also been considered a marital liability. The trial court failed to make any such adjustment. This should be considered double-dipping against the Appellant.*

***It is submitted the trial court did not address this issue in its ruling and it is further submitted that such an adjustment is not supported by the evidence and is therefore plainly wrong and should, therefore, be reversed." (Emphasis added)***

Set out below is the CAV's ruling regarding this assignment of error6. Your

Appellant has numbered sentences of the CAV's ruling to organize and segment the

CAV's rationale for convenience of reference in his argument:

41.3.1. In his third and fifth assignments of error, husband argues that the trial court erred in accepting Connors's accounting of assets in a manner contrary to Reckenen's accounting.

41.3.2. Husband also contests Connors's "inclusion of $18,534, which represented prior distributions to [husband] from Reckenen." As of September 30, 2018, a Reckenen accounting balance sheet showed what Connors characterized as a "shareholder receivable" of $18,534.

**41.3.3. It is undisputed that this amount was a distribution to husband that had not yet been reported to the IRS as dividends.**

41.3.4. Connors "considered it to be an asset of the business" that husband would need to repay to Reckenen.

41.3.5. Stephanson, however, testified that he "assumed that that really was just a form of, of either a salary or a dividend but in any event, it was not a receivable, an asset that someone would ever pay to own. And so I eliminated it again from the balance sheet."

41.3.6. The determination of whether the $18,534 shareholder receivable should be treated as a business asset for the purpose of Reckenen's valuation was a question of fact. See Patel v. Patel,61 Va. App. 714, 722, 727 (2013).

---

[6] The ruling does not address each assignment of error separately stating, "For the purpose of organization, we address related assignments of error together."

41.3.7. The trial judge, as the factfinder, weighed the evidence and witness testimony, and as discussed *supra*, made findings of fact and witness credibility – and in doing so, found Connors's testimony to be more credible than Stephenson's.

41.3.8. The trial court's inclusion of the $18,534 as an asset of Reckenen was not plainly wrong or without credible evidence in the record to support it. (Emphasis added)

**In Item 41.3.3,** CAV acknowledged that it was undisputed that this amount was a prior dividend (i.e., income) to the Plaintiff. The trial court did not hold that it was a loan. No enforceable loan agreement was in place.

If it is undisputed that it was a prior distribution, i.e., dividend, then how could the trial court or CAV have held that it was a loan? This holding by the trial court and by CAV defied any logic.

Further, the trial court did not make any specific finding of fact on this issue. CAV either must have remanded the case back to the trial court to make specific findings, or, in the alternative, CAV must have provided a de novo review. CAV did not remand or perform a de novo review.

By CAV not remanding the case to the trial court and by not performing a de novo review, CAV violated Plaintiff's 14th Amendment rights to due process and equal protection of the law.

Further, CAV omitted any analysis on Plaintiff's second argument (business asset = marital debt) from in its written unpublished opinion. This issue was raised with CAV by the Plaintiff.

Even if this prior dividend distribution was considered a loan from Reckenen to the Plaintiff as a matter of trial court's discretion. It was a loan from the Plaintiff (as the owner of Reckenen, i.e., the creditor) to the Plaintiff as an individual (i.e., the debtor) and it must have been held as a matter of law that the loan was a marital debt, to avoid

double- dipping, and it should have been eliminated from any calculation of value. In other words, if it was considered an asset of the business then it must also have been considered a marital liability.

CAV only considered one side (i.e., marital asset) and not the other side (i.e., marital liability). The result was double-dipping to the direct prejudice of the Plaintiff.

Such double-dipping is against CAV's precedent set out in *Garza v. Garza (VA App. Record No. 1286-18-4, 2018).*

Virginia courts do not have issue preclusion on this issue because the issue was not decided, either by the trial court or by CAV, in accordance with well-established Virginia law.

If this issue of the loan from the business to Plaintiff was decided by the trial court and CAV under some supposed Virginia Law, such a law is unconstitutional and is a violation of Plaintiff's 14th Amendment rights to due process and equal treatment under the law.


### Divorce Case: Issue of inclusion of transcript of Conners' deposition in the record

42. Defendant's expert Conners stated the following during her deposition done a few days before trial.

> *Q. And have you testified in court before as an expert?*
> *A.  I have not.*

43. Trial Judge Bruce D. White stated the following in his ruling:

> *"I did not find that same type of situation with Ms. Conners, **although she does many of these evaluations**, I did not find that type of perceived bias to me." (Emphasis added)*

44. It is evident that Judge White was acting as a character witness for the Defendant's expert, which is expressly prohibited by Virginia's Cannons of Judicial conduct.

45. Judge White's actions in this regard are troubling to Plaintiff because Conners stated during her deposition that she has never testified in front of any court before.

46. If Ms. Conners testimony was correct, then Judge White included such language in his ruling sokekt to create an illusion of credibility and deliberately to prejudice Plaintiff.

47. After the trial court hearings and proceedings were concluded, the Plaintiff filed a notice of appeal in the Fairfax County Circuit Court on May 2, 2019.

48. On May 20, 2019, Plaintiff then filed the following four transcripts of various court proceedings with the court so that the transcripts can be made part of the record on appeal:

48.1.     Transcript from the Deposition of Ms. Conners (Defendant's expert).

48.2.     Transcript of the trial hearing dated 2/27/2019.

48.3.     Transcript from the Court's ruling dated 2/27/2019; and

48.4.     Transcript from the hearing of 'Motion to Issue Stock of Reckenen, Inc. in Lieu of Monetary Award'

49. On May 23, 2019, Defendant Malik filed 'Objections to Inclusion of Deposition Transcript in Record on Appeal'.

50. On May 24th, the Plaintiff filed a response to the Defendant's objections citing Rule 5A:7(a)(6) which stated:

> Contents: The following constitutes the record on appeal from the trial court.... (5) any deposition and any discovery material encompassed within Part Four offered in evidence (whether admitted or rejected) at any proceeding.

51. The deposition transcript was offered into evidence at trial as it was part of the Plaintiff's

exhibits used during the trial. Further, the transcript was referenced by Conners during the

cross-examination by the Plaintiff's attorney which made it part of the evidence as well.

52. According to Rule 5A:8(d) of the Rules of the Supreme Court of Virginia, the trial court

had 10 days after the notice of objection was filed to rule on the objection. Rule 5A:8(d)

states:

> ....*within 10 days after the notice of objection is filed with the clerk of the trial court, the judge shall 1)overrule the objection; or 2) make any corrections that the trial judge deems necessary; or 3) include any accurate additions to make the record complete; or 4) certify the manner in which the record is incomplete; and 5) sign the transcript or written statement.*

53. The trial court took no action within the 10 days prescribed in rule 5A:8(d) which expired

on June 2, 2019.

54. Rule 5A:10 (d) of the Rules of Supreme Court of Virginia state *"the trial court shall retain*

*the record for 21 days after the filing in his office of such transcript or statement or, if*

*objection is made to the transcript or statement pursuant to Rule 5A:8(d), the clerk of the*

*trial court shall retain the record for five days after the objection is acted upon by the trial*

*judge.".*

55. Since the trial judge did not act within the ten (10) day period prescribed by 5A:8(d), which

expired on June 2, 2019, the Clerk should have kept the record for another five (5) days,

which expired on June 7, 2019, and transmitted the complete record to the Court of

Appeals. But the record was not transmitted.

56. On June 17th, 2019, Plaintiff received an email from Judge White's law clerk asking to

place the objection on the motions docket to be heard on one of the following dates July 12,

July 19, July 26, or August 9, 2019. Plaintiff received this communication from Judge

White's law clerk twenty-five (25) days after the Defendant filed her Objections.

57. On July 19th, 2019, the Plaintiff received another email from the law clerk of Judge White

stating:

> *The appeals clerk received a call from Mr. Sultan yesterday regarding the*
> *appeal.* ***She let me know and explained to me that the Appellant in this***
> ***matter does not want to put a hearing on to argue the "inclusion of***
> ***deposition transcript in record of appeal".*** *With that fact I reviewed the file.*
> *The deposition of Kirstine Conners was never offered into evidence. As such,*
> *the record on appeal will be filed accordingly. (Emphasis added)*

58. Plaintiff does not recall this referenced communication with the trial courts appeals clerk.

Plaintiff only inquired from the trial court's appeals clerk as to why there was a delay in the

transmission of the transcripts since the 10-day period prescribed by Rule 5A:8(d)(3) had

long expired. It was Plaintiff's understanding that trial court's Appeals clerk only dealt

with the transmission of the record to CAV and there was no reason to discuss scheduling

of any motions with her as it did not concern her.  Further, Plaintiff is fairly certain, but not

100%, that Plaintiff's conversation with the Appeals clerk happened prior to the June 17th,

2019, first email from Judge White's law clerk referenced above.

59. Judge White's law clerk appears to have decided the issue on her own, which she had no

authority to do. This was a deliberate violation against the Plaintiff.

60. The plaintiff then filed a 'Motion to Summon the Transcript of Deposition from Circuit

Court' with CAV.

61. After various motions on this matter, CAV issued its ruling on the motion stating the

following:

> *"This Court's rules provide* ***two methods*** *through which a transcript can be*
> *made part of the record on appeal. First, under Rule 5A:7(a)(6), the record on*

> *appeal includes "any deposition and any discovery material encompassed within Part Four offered into evidence (whether admitted or rejected at any proceedings". **Second, the record on appeal includes "the transcript of any proceeding...when made a part of the record as provided in Rule 5A:8..." Rule 5A:7(a)(7). A "transcript of any proceeding is part of the record when it is filed in the office of the clerk of the trial court within 60 days of after entry of the final judgement" Rule 5A:8.***
> ***The transcript was not filed timely in the clerk's office of the circuit court.***
> *"(emphasis added)*

62. Plaintiff found this CAV ruling extremely strange because the official records of CAV showed that the transcript in question had been timely filed within the sixty (60) days mandated by Rule 5A:7(a)(7) and Rule 5A:8, which are referenced in CAV's ruling. CAV may have been attempting to deceive the Plaintiff, who was acting pro se.

63. Plaintiff then filed a 'Motion to Reconsider' with CAV on October 21, 2019, stating that the transcript was timely filed within sixty (60) days as mandated by Rules 5A:7(a)(7) and 5A:8, and Plaintiff stated.

> *"The final judgement of the trial court was entered on April 5, 2019. The transcript of the deposition of Ms. Conners was filed with the clerk of the trial court on May 20, 2019.*
> *Therefore, the transcript was filed within the 60-day window in accordance with Rule 5A:7(a)(7) and Rule 5A:8."*

64. CAV then issued an order upon the Plaintiff's 'Motion to Reconsider' with entirely a new basis to deny the motion, and stated:

> *Sultan argues that the deposition transcript was made part of the record because he filed a copy in the circuit court's clerk's office with the hearing transcripts in accordance with Rule 5A:8. We disagree. Rule 4:7(f) states that "[d]epositions shall become part of the record only to the extent they are offered into evidence". Rule 5A:7(a)(6) further provides that the record on appeal includes "any deposition and any discovery material encompassed within Part Four offered in evidence (whether admitted or rejected) at any proceeding.". This Court previously remanded the matter to the circuit court to determine whether the deposition was made part of the record. The circuit court certified that the*

> *deposition transcript was not offered into evidence at trial and, therefore, was not part of the record.*

65. The second CAV ruling was completely different than the first ruling.

66. In the first ruling, CAV stated there were **two methods** to make deposition transcripts part of the record on appeal.

    66.1.      First method, under rule 5A:7(A)(6); and

    66.2.      Second method under Rule 5A:7(a)(7) by filing with the trial court within 60 days.

67. **Once, Plaintiff provided evidence that Plaintiff filed the transcript with the court within 60 days prescribed by the second method, CAV changed its ruling, and the second method was no longer available.** The issue here is that there was no change in law between the first order and second order. CAV cannot issue one ruling based on certain facts, and when those facts are challenged, issue a completely different ruling.

68. These actions by CAV did not give any appearance of propriety or justice and were deliberately performed to remove the transcript from the record because it was damning to Judge White.

69. CAV's actions were arbitrary and capricious taken to remove the transcript from the record.

### Divorce Case: Issue of settlement negotiations

70. On October 28, 2019, Nicholas J. Solan, attorney for the Defendant, Nosheen Malik reached out to Plaintiff with a settlement proposal.

71. On November 21, 2019, Plaintiff and Solan spoke over the phone, and there was some sparring between Plaintiff and Solan during the phone conversation. Plaintiff does not remember the entire conversation, but he remembers that Mr. Solan said that if Plaintiff

accuses him of colluding with Judge White, he will not get justice and, subsequently, that is what happened.                                                                                    ,

72. After the phone conversation, Plaintiff wrote an email which was sent in response to an email sent by Mr. Solan (Solan) email stating: "For settlement purposes only" and in which Plaintiff accused Solan of colluding with Judge White.

73. This email to Solan was sent on November 22, 2019.

74. Solan then had his associate Andrew P. Hoffman, also an attorney licensed in Virginia, file that email with the Court of Appeals as an 'APPELLEE'S DESIGNATION OF CONTENTS OF APPENDIX' on November 25, 2019.

75. This email chain was clearly part of the settlement negotiations and could not be made part of the record on appeal under the following rules of the supreme court of Virginia.

75.1.    Rule 5A:25(d) which states: "*not more than ten days after this [i.e., Appellant]*, *designation is filed, counsel for Appellee shall file with the clerk of the Court of Appeals a designation of any additional contents to be included in the Appendix*". The designation in question was not filed within the 10-day period prescribed by this rule.

75.2.    Rule 5A:25(g) which states: "*Nothing shall be included in the appendix that is not germane to an assignment of error. As examples, no pleadings (other than the basic initial pleadings as finally amended) shall be included unless an assignment of error is presented relating to it, and then only the portion thereof to which the assignment relates; and testimony relating solely to the amounts of damages shall not be included unless error is assigned relating to the amount of damages*". The designation in question was not germane to an error and was never referenced by the Defendant's in their reply brief.

75.3.     Rule 2:408 which states: *"Prohibited Uses. Evidence of the following is not admissible on behalf of any party in a civil case – either to prove or disprove the validity or amount of disputed claim  or to impeach by a prior inconsistent statement or by contraction: 1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and 2) conduct or any statement made during compromise negotiations about the claim"*. The settlement emails in question were clearly part of the settlement negotiations and could not be filed with the Court of Appeals.

76. There was no proper purpose for filing the settlement negotiation emails with the Court of Appeals.

77. Va. Code § 8.01-271.1(b) states: *"The signature of the attorney or party constitutes a certificate by him that (i) **he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.".*  (Emphasis added)

78. Defendant Andrew P. Hoffman signed the filing of settlement negotiations.

79. Plaintiff asserts that Mr. Hoffman's filing of settlement negotiations was done in bad faith to solicit help from CAV in order to cover up the indiscretions of Judge White and to gain an unfair advantage over Plaintiff.

80. After the Court of Appeals issued its ruling and after seeing the obvious bias in the Court of Appeal's written opinion, your Plaintiffs filed a 'Motion to Strike' these settlement

negotiations with the CAV and the CAV did not provide a ruling on the motion. This was a prejudicial error which must have been corrected but was not in violation of Plaintiff's due process rights.

81. Plaintiff then appealed to the Supreme Court of Virginia (SCV) on the grounds of the above-mentioned prejudicial error, among other grounds.

82. Plaintiff then filed a 'Motion for Sanctions' with the SCV.

83. The 'Motion for Sanctions' was filed in the SCV because the CAV refused to provide a ruling on the 'Motion to Strike'.

84. The SCV did not provide a ruling on the 'Motion for Sanctions' while the Petition for Appeal was pending with the court in opposition to Virginia Code § 8.01-271.1(d) which states:

> If a pleading, motion, or other paper is signed or made in violation of this section, **the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion**, a represented party, or both, **an appropriate sanction**, which may include an order to pay to the other party or parties the amount of reasonable expenses, incurred because of the filing of the pleading, motion, or other paper or making of the motion, including reasonable attorney fees.

85. The SCV denied Plaintiff's 'Motion for Sanctions' in its Order denying the 'Petition for Appeal' without providing any reasoning on either. SCV had to timely rule on the 'Motion for Sanctions' before issuing its final order on the Plaintiff's petition for appeal. Issuing an order along with the order refusing the petition for appeal is just a violation of due process.

86. CAV protected Defendant Hoffman, Solan, and White by not ruling on the 'Motion to Strike' which was a prejudicial error.

87. The SCV, following in the footsteps of CAV, protected Defendant Hoffman, Solan, and White by not timely ruling on the 'Motion for Sanctions' and gave Defendant(s) unfair

advantage and a free pass to do whatever they wanted to do to the direct prejudice of Plaintiffs' rights.

88. The actions and rulings of the three judge Panel of the CAV and the three-judge panel of SCV, in totality, were intentionally done to violate Plaintiff's 14th Amendment rights in order to cover up the intentional disregard of the Virginia's laws by Defendant White.

## Divorce Case: Appeal to the Supreme Court of Virginia (SCV)

89. After all the actions in CAV was complete. Plaintiff noted an appeal to SCV on May 24, 2020. (App. p. 42)

90. Plaintiff filed his 'Petition for Appeal' with SCV on June 8th, 2020 (App. p. 43). The basis for the Petition was error in CAV's ruling, and prejudicial error committed during proceedings in CAV by Defendant Malik's attorneys' erroneous and malicious filing of parties' settlement negotiations which required a harmless error analysis by SCV. Further, it was asserted that CAV did not have finality because VA § 17.1.410 (3) did not give CAV finality of decision on equitable distribution claims arising out of divorce *"Cases involving the affirmance or annulment of marriage, divorce, custody, spousal or child support or the control or disposition of a juvenile and other domestic relations matter arising under Title 16.1 or Title 20, or involving adoption under Chapter 12 (§ 63.2-1200 et seq.) of Title 63.2"[7]*. If VA's General Assembly intended to give finality to CAV on equitable distribution claims, it would have said so in § 17.1.410, as it did for spousal and child support. Further, there was a prejudicial error pertaining to the unlawful filing of settlement negotiations committed during proceedings with CAV by Defendant Malik's attorneys which at a very minimum required a harmless error analysis by SCV. See *Harman v.*

---

[7] This code section was subsequently modified by Virginia's General Assembly effective January 1, 2022.

*Honeywell Int'l, Inc., 288 Va. 84,94 758 S.E. 2d 515, 521 (2014), Dandridge v. Marshall, 267 Va. 591, 597, 594 S.E. 2d 578,582 (2002), stating that all errors are "presumed to be prejudicial unless it plainly appears that it could no have affected the result". Also see Grant v. Commonwealth, 54 Va. App. 714, 724-25, 682 S.E. 2d 84,89 (2009) "the original common-law harmless error rule [places] the burden on the beneficiary of the error [Defendant Malik] either to prove or disprove that there was no injury or to suffer the reversal of his erroneously obtained judgement".*

91. On August 10, 2020, Plaintiff filed a *'Motion for Sanctions'* with SCV asking SCV to provide a ruling on the erroneous and malicious filing of Parties' settlement negotiations with CAV by Defendants Hoffman and Solan. Plaintiff was very keen on getting a ruling on his motion because CAV refused to provide a ruling on his properly filed 'Motion to Strike' these settlement negotiations which constituted a prejudicial error against the Plaintiff.

92. SCV did not provide a ruling on Plaintiff's *'Motion for Sanctions'*.

93. On October 4th, 2020, Plaintiff filed *'First Addendum to the Motion for Sanctions'* asking SCV to provide a ruling on Plaintiff's *'Motion for Sanctions'*.

94. On October 15th, 2020, Defendant Malik filed her *'Objection to Appellant's First Addendum to Motion for Sanctions'* with SCV.

95. On October 21, 2020, Plaintiff filed a response to Defendant Malik's objections.

96. SCV still did not provide a ruling on Plaintiff's 'Motion for Sanctions'.

97. SCV then scheduled an oral argument on Plaintiff's 'Petition for Appeal'.

98. Plaintiff then filed a 'Motion for Sequencing' asking SCV to provide a ruling on Plaintiff's 'Motion for Sanctions' prior to the oral argument.

99. SCV did not provide any response.

100. On December 1, 2020, Plaintiff then presented his oral argument on his *'Petition for Appeal'* to the three-justice panel of SCV consisting of Justices S. Barnard Goodwyn, D. Arthur Kelsey, and Senior Justice Charles S. Russell. During the oral argument Justice Kelsey asked the following question of Plaintiff at the oral argument

> *JUSTICE KELSEY: Mr. Sultan in, I too as all of us have read the Court of Appeals opinion. And whether you or the Supreme Court of Virginia agrees or disagrees, it is not appropriate to deem a court biased simply because you disagree with it. Do you understand?*
> *MR. SULTAN: Your Honor, I will get into that in a little bit here....*

It was obvious to both the Plaintiff and to Justice Kelsey that the purpose of an appeal is to correct errors in lower courts' rulings and that was the purpose of Plaintiff's appeal.

At this point it was also obvious that errors were committed by both the trial court and the panel of CAV. Justice Kelsey somewhat acknowledged that in his question by stating *"I too as all of us have read the Court of Appeals opinion, and whether you or the Supreme Court of Virginia agrees or disagrees..."*

Through his question Justice Kelsey wanted Plaintiff to acknowledge that the panel of CAV was not biased. Plaintiff chose to not answer this question posed by Justice Kelsey because 1) CAV did not provide a ruling, or any analysis, on Plaintiff's *'Motion to Strike'* on the issue of erroneous and malicious settlement negotiations filed by the Defendant Malik's attorneys and 2) SCV had not provided a ruling on the Plaintiff's *'Motion for Sanctions'* as of the time of oral argument, thus not acknowledging the above-mentioned prejudicial error. Had either Court provided a ruling on the issue of erroneous and malicious filing of settlement negotiations, Plaintiff would be guaranteed a harmless error analysis. If that had happened, Plaintiff may have agreed with Justice Kelsey for the sake of getting some form of

justice, but not when CAV and SCV continually refused to acknowledge the prejudicial error committed by Defendant Malik's attorneys, Hoffman and Solan.

Defendant Kelsey's question "*it is not appropriate to deem a court biased simply because you disagree with it. Do you understand?*" when taken in the context of Plaintiff's prior filings in which he continually asked CAV and SCV to acknowledge the prejudicial error, and the obvious disregard of Virginia Law by CAV in its written opinion, can be taken as a threat to not provide any justice, if Plaintiff didn't accept that there was no bias in the ruling of CAV. When Plaintiff did not answer, no justice was subsequently provided. This is evidence of conspiracy to commit fraud on the court and on the Plaintiff.

101.  On December 16, 2020, SCV issued its order refusing Plaintiff's Petition for Appeal stating:

> *Upon review of the record in this case and consideration of the argument submitted in support of and in opposition to the granting of an appeal, the Court refuses the petition for appeal.*
> *Upon consideration whereof, the Court denies appellant's motion for sanctions and sequencing.*

Based on the above language, the following are evident:

101.1.    SCV did not provide a basis for its refusal of Plaintiff's Petition for Appeal.

101.2.    SCV did not state that there was no error in the ruling of CAV.

101.3.    SCV did not provide a harmless error analysis.

101.4.    SCV did not refuse the petition based on finality under VA Code § 17.1.410.

101.5.    SCV did not acknowledge the prejudicial error caused by the purposeful, erroneous, and malicious filing of protected settlement negotiations by Defendant Malik's attorneys, Hoffman and Solan.

102. On December 28, 2020, Plaintiff filed a *'Petition for Rehearing After Refusal of the Petition for Appeal'* asking SCV to provide a reason for its refusal. Specifically, whether the refusal was based on CAV's finality under VA Code § 17.1.410 (which required SCV to provide a harmless error analysis due to the prejudicial error of CAV) or whether the refusal was based on the 'merits of the case' (which required SCV to certify that there was not error in the ruling of CAV). Neither was provided.

103. On February 5, 2021, SCV issued an order denying Plaintiff *'Petition for Rehearing After Refusal of the Petition for Appeal'* by stating:

> *On consideration of the petition of the appellant to set aside the judgement rendered herein on December 16, 2020, and grant a rehearing thereof, the prayer of said petition is denied.*

It is evident that SCV, once again, refused to provide any reasoning whatsoever which is a violation of Plaintiff's 14th Amendment rights.

104. In the absence of any reason provided by SCV, it can be assumed that the effect of SCV's refusal of the Plaintiff's *'Petition for Appeal'* was an affirmance of CAV's ruling on the merits 'of the case'. See *Sheets v. Castle, 263 Va. 407, 559 S.E.2d 616 (Va. 2002)* **"With the exception of cases with procedural defects and the limited number of cases for which appellate review by the Supreme Court of Virginia is dependent upon "a substantial constitutional question as a determinative issue or matters of significant precedential value" (Code §§ 17.1-410 and -411), the refusal of a petition for appeal constitutes a decision on the merits.";** see also *Wright v. West, 505 U.S. 277, 283 (1992)* "the Supreme Court of Virginia refused the petition a disposition indicating that the [C]ourt found the petition without merit"; see also *Jackson v. Virginia, 443 U.S. 307, 311 n. 4, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)* "[e]ach petition for writ of error under Va. Code §

*19.2-317 (1975) is reviewed on the merits and the **effect of a denial is to affirm the judgment of conviction on the merits"** ; See also Saunders v. Reynolds, 214 Va. 697, 700, 204 S.E.2d 421, 424 (1974) "[w]e state unequivocally that a decision to grant or refuse a petition for writ of error is based upon one equally-applied criterion "the merits of the case".*

105. Based on the above cited case law and lack of any reason provided by SCV in its refusal of Plaintiff's *'Petition for Appeal'*, it is evident that Supreme Court of Virginia <u>did not</u> refuse Plaintiff's petition based on CAV's finality under Code §§ 17.1-410 and -411. Further, CAV did not have finality due to the procedural defect created by the erroneous and malicious filings of parties' settlement negotiations and no harmless error analysis was provided by SCV which must have been provided. See *Harman v. Honeywell Int'l, Inc., 288 Va. 84, 94, 758 S.E. 2d 515, 159521 (2014); Dandridge v. Marshall, 267 Va. 591, 597, 594 S.E.2d 578, 582 (2004); Grant v. Commonwealth, 54 Va. App. 714, 724-25, 682 S.E.2d 84, 89 (2009), Zektaw v. Commonwealth, 278 Va. 127, 139 41, 677 S.E.2d 49,56 (2009)*

106. Article VI, Section 6 of the Constitution of Virginia states the following:

> *"When a judgment or decree is reversed, modified, **or affirmed** by the Supreme Court, or when original cases are resolved on their merits, **the reasons for the Court's action shall be stated in writing and preserved with** the record of the case." (Emphasis added)*

See also, *Saunders v. Reynolds, 214 Va. 697, 700, 204 S.E.2d 421, 424 (1974) "[w]e state unequivocally that a decision to grant or refuse a petition for writ of error is based upon one equally-applied criterion "the merits of the case".*

Since SCV refused to provide any reason for its refusal of Plaintiff's 'Petition for Appeal', SCV violated the Constitution of Virginia and also violated Plaintiff's 14th Amendment rights.

107. On February 15, 2021, Plaintiff filed a 'Motion to Vacate' with SCV asking it to vacate its order upon Plaintiff's 'Petition for Appeal' as SCV has failed to provide any harmless error analysis OR provide a reason for its refusal of the Plaintiff's *'Petition for Appeal'*.

108. On April 13, 2021, SCV denied Plaintiff's *'Motion to Vacate'* without providing any reason. This was a continued violation of Plaintiff's 14th amendment rights.

109. On April 14, 2021, Defendant Malik's attorney Hoffman sent an email to the clerk of SCV asking when SCV will be returning the record to the lower court. In response Muriel Pitney, Chief Deputy Clerk of SCV responded as follows (App. p. 80):

> *"We generally hold the case for **21 days** and then return the record. You will not be notified, but you may check back with this office after that time period to see if it has been returned." (Emphasis added)*

110. On April 22, 2021, only eight (8) days after SCV's denial of Plaintiff's *'Motion to Vacate'* and while the record was still with SCV, as evidenced by the email from Muriel Pitney referenced above, and while no mandate was issued by the SCV, the panel of CAV issued its mandate to the Circuit Court of Fairfax County. See App. p. 83-84.

This was a continued violation of Plaintiff's rights. As of April 22, 2021, all the actions in SCV were not complete, and no mandate had been issued by SCV. 'Rule 5:36 Mandate' of the Rules of Supreme Court of Virginia, which apples to the proceedings in the Supreme Court of Virginia states:

> (a) Time. When there can **be no further proceedings in this Court, the clerk of this Court shall forward its mandate promptly to the clerk of the circuit court or commission in which the case originated <u>and to the clerk of the Court of Appeals if the case has been heard by that court.</u>** (Emphasis added)

SCV did not issue a mandate. CAV had no jurisdiction to issue a mandate as the proceedings were not before it. However, the panel of CAV proceeded to issue the mandate in violation of the Rules of the Supreme Court of Virginia. See App. p. 83-84.

111. The email that was sent to Plaintiff by the clerk of CAV with the attached mandate on April 22, 2021, stated: (See App. p. 83-84)

> *Attached is the Court's **mandate certified today [April 22, 2021]** in the above-referenced matter.*

The attachment to the email which was the actual mandate was however dated April 28th, 2020. The date of April 28, 2020 was roughly a year earlier than the date of April 22, 2021. If the mandate was certified on April 22, 2021, why was the actual mandate dated April 28, 2020? This may have been done to start the statute of limitations a year earlier and perhaps to pretend that no action was taken in SCV. We don't know the exact reason. What we do know is that CAV did not have any authority to issue a mandate as the case was not before it. What we also know is that SCV did not issue a mandate in this case. This is evidence of conspiracy to commit fraud upon the court and violate Plaintiff 14th amendment rights under the guise of state law. Regardless, the mandate was issued by CAV on April 22, 2021, which was a continuing violation of Plaintiff's rights. Plaintiff incorporates transcripts of orders of SCV by reference. See App. p. 76,77,79.

112. The order to release bond and determine judgement interest was entered in the Circuit Court of Fairfax County on <u>August 6, 2021</u>. This order was entered despite the fact that there was no legal basis to the underlying rulings and was therefore a continuing violation of Plaintiff's 14th amendment rights.

## Custody Case: Juvenile & Domestic Relations (J&DR) Court and Circuit Court of Fairfax County

113. After the above-mentioned divorce action was appealed, Defendant Malik started a modification of child custody action in the Fairfax J&DR Court on July 9, 2019.

114. The child custody action was started roughly three months after the entry of the 'Final Decree of Divorce' in the Circuit Court of Fairfax County on April 5, 2019.

115. Since Divorce is an all-encompassing matter in Virginia, child custody was an issue of the divorce proceedings. The parties relied upon their valid and enforceable agreement on child custody instead of litigating child custody under the divorce proceedings.

116. The Final Decree of Divorce did not include the parties' previous enforceable agreement on child custody. However, it is irrefutable that child custody was the subject matter of the Divorce action.

117. It is well established law in Virginia that once a party notes an appeal, the trial court loses jurisdiction over the parties involved and the subject matter of their controversy. See *Greene v. Greene, 223 Va. 210, 288 S.E.2d 447, "The orderly administration of justice demands that when an appellate court acquires jurisdiction over **the parties involved in litigation and the subject matter of their controversy**, the jurisdiction of the trial court from which the appeal was taken must cease. We acquired jurisdiction over this matter when Ms. Greene's petition for appeal was filed and docketed in the Clerk's Office of this Court, and thereafter **corrections and alterations could be made only with leave of this Court."*

118. The trial court did not have any authority to modify the Child Custody while the appeal was still pending without the leave of the Court of Appeals. *(See Frazer v. Frazer, 23 Va.*

App. 358, 477 S.E.2d 290 (Va. Ct. App. 1996) "*This Court acquires jurisdiction over a case when the appeal is filed and docketed in the clerk's office of the Court. Id. "Thus, while the trial court may enforce a support and custody order, it may not modify such order without leave of court". (Emphasis added)*

119. Since the trial court did not incorporate the parties' agreement on child custody in the 'Final order of Divorce' and it did not transfer the child custody matter to the J&DR court, neither the trial court nor J&DR court had any jurisdiction to modify the parties' agreement on child custody without the leave of Court of Appeals of Virginia. No leave was applied for and no leave was granted to Defendant Malik.

120. Ms. Malik and Mr. Solan should have known the well-established law in Virginia that precluded repeated litigation on Child Custody without the leave of the Court of Appeals. However, Defendants Malik and Solan proceeded to initiate a modification of child custody action in J&DR court to agonize the Plaintiff and to hide the significant help they received from Judge White in the divorce proceedings.

121. Solan intentionally did not include the parties' agreement on child custody in the Final Order of Divorce as he intended to start custody proceedings in the event the Plaintiff appealed the case. The evidence of this intention comes from the transcript of the hearing held in the Circuit Court of Fairfax County on March 29, 2019, where Judge White and Mr. Solan had a discussion about the VS-4 FORM – COMMONWEALTH OF VIRGINIA – REPORT OF DIVORCE OR ANNULMENT[8] (App.p.7). Mr. Solan had marked Box 24 as 'Not Applicable' on purpose even though there were children of the marriage, and their custody was decided by the parties through a mutual agreement. When the court asked him

---

[8] Plaintiff was not able to obtain a copy of the actual form submitted as the Clerk of Circuit court informed me that they do not have a copy in their records.

why he marked Box 24 as not applicable, Solan stated *"It is because it wasn't addressed in this particular case, Your Honor. I believe the language there sort of implies that a decision was made in this particular case, and that is why I wrote N/A"*. See App. p. 6. This shows intent to start a custody action in order to agonize the Plaintiff if he appealed the divorce action.

122. Defendant Malik filed for modification of child custody in the J&DR court order without obtaining any leave from the Court of Appeals. This was an intentional action started by Ms. Malik, with the advice of Mr. Solan, in order to agonize and harass the Plaintiff to get him to drop his appeal on the issue of equitable distribution. Further, Plaintiff's kids were now being intentionally used as a bargaining chip.

123. A pattern of abuse emerged where Defendant Malik subjected Plaintiff to daily abuse over various child custody matters and refused to let Plaintiff exercise custody on various occasions. This was done to harass the Plaintiff and use his kids as a bargaining chip to get him to drop his appeal.

124. The post Final Decree custody action was decided by J&DR Court on October 30, 2020. J&DR Court saw through the abuse and stated the following in its ruling:

> *"The real issue is mother is not requiring FSH to go with her father for visitation. It may be a basis for a rule of show cause against mother, but it is not a basis to modify the custody and visitation schedule."*

125. Ten days later, on November 9, 2020, Defendant Malik filed an appeal from the J&DR Court order to the Fairfax County Circuit Court where Judge White still controlled the calendar as the Chief Judge.

126. Appeals from J&DR courts are a *de novo trial* in the Circuit Court.

127. Meanwhile, the appeal on the divorce action was ongoing either in the Virginia Court of Appeals or Virginia Supreme Court and the Defendants Malik and Solan had still not obtained a leave from CAV, which was required under Virginia law.

128. Defendant Malik was now relitigating the same child custody issues (for the 3rd time) that were subject to the divorce action in the same Circuit Court whose Final Decree of Divorce was still in appeal.

129. Plaintiff alleges that the Judge White and Judge Bernhard acted without any personal jurisdiction over the parties or the subject matter of the parties controversies as the case was appealed.

130. This type of duplicative litigation is not allowed as is set forth in Virginia case law cited above.

131. Despite clear Virginia case law, custody matters proceeded, and the pattern of abuse by Defendant Malik continued.

132. Defendant Malik testified under oath in a hearing with the J&DR Court held on September 15, 2020, that she was unemployed since June of 2020.

133. Plaintiff could not fathom how Defendant Malik could afford all this repetitive and prolonged litigation while being unemployed because this same, repeated litigation had brought Plaintiff to the verge of bankruptcy.

134. Both parties requested their costs to be awarded by the court in the underlying J&DR action.

135. Plaintiff then asked for discovery of financial information from Ms. Malik. Specifically, Plaintiff issued discovery to Defendant Malik asking for the following:

*135.1.     source, date, and amount of all monies you have received for any reason (employment, gift, distribution, loan etc.) between May 2020 and present date.*

135.2.    *For the period of April 1, 2020, through the present, produce all periodic financial account statements in your name, jointly with another person, or over which you have signatory authority, including but not limited to the following accounts: bank statements, retirement account statements, stock account statements, IRAs, 401(k).*

**135.3.    Produce all tax documents for the 2020 tax year showing any income including tax returns (filed or draft) W2s, 1099s, K-1s; and**

135.4.    *Produce all documentation which shows your receipt of any money exceeding $250 from any source between May 2020 and the present.*

**135.5.    Produce all documentation showing the amount of attorney fees you have paid in relation to this case.**

136. Defendant Malik refused to provide this information (App. p. 13-19)

137. Under VA Code § 16.1-278.19 discovery was certainly permitted because this statute states:

> ... *the court may award attorney* fees *and costs on behalf of any party as the court deems **appropriate based on the relative financial ability of the parties and any other relevant factors to attain equity***" (emphasis added). See also VA Code § 16.1-296(I) *"In all cases on appeal, the circuit court in the disposition of such cases shall have all the powers and authority granted by the chapter to the juvenile and domestic relations district court.*

138. Plaintiff then filed a 'Motion to Compel Discovery', which was heard once again by the Chief Circuit Court Judge Bruce D. White on June 11, 2021.

139. Judge White would not permit discovery despite the plain language of the statute. When Judge White did not permit discovery Plaintiff's attorney asked if he would allow the trial judge to bifurcate the trail and allow discovery if the Plaintiff wins, to which Judge White agreed. See App. p. 25-26.

140. Judge White was misusing his powers as the Chief judge, who controlled the calendar, to appoint himself to all of Plaintiff's proceedings where each time he violated Plaintiff's 14th amendment rights.

141. Plaintiff avers that Judge White's refusal to allow Plaintiff discovery amounts to discovery fraud committed by a state actor, the trial judge. This was intentionally done by Judge White to:

141.1.    Help Defendant Malik's in hiding her Income and Assets.
141.2.    Help Defendant Malik's hide her employment situation (Defendant Malik had testified in a court proceeding on September 15, 2020, that she was unemployed, and she was still representing as of June 11th, 2021, that she was unemployed)
141.3.    Help Defendant Malik in hiding Attorney fees paid by Defendant Malik to Defendant Solan, Alzamora, Hoffman, and Solan Alzamora PLLC.
141.4.    Stop Plaintiff from propounding his case on attorney fees.

142. Judge White once again was assisting Defendant Malik under the color of state law.

143. For the circuit court hearing regarding Plaintiff's request for discovery, Solan sent his law partner Jacob Alzamora to argue against the Plaintiff's 'Motion to Compel' in order to remove any blame of misdoing from Solan and that is why Jacob Alzamora is a Defendant in this action because he appeared as counsel for Defendant Malik at the circuit court hearing regarding Plaintiff's request for discovery. At this hearing Jacob misrepresented the law regarding the discovery (App. p. 21-24) in order to get Judge White to rule in favor or the Defendants. Judge White was also a willing participant on this motion where intentionally ruled against the Plaintiff in opposition to the statute which permitted discovery. This was an intentional tort committed by Jacob Alzamora and Bruce D. White.

144. The hearing on Ms. Malik's child custody appeal was originally scheduled for June 24, 2021. It was quite obvious at this point that Judge White is going to once again appoint himself to the hearing because:

144.1.    White had previously appointed himself to all of Plaintiff's hearings in the Circuit court and violated Plaintiff's rights in each hearing.
144.2.    White allowed the trial judge to bifurcate the trial in his order denying Plaintiff's discovery requests, and White was going to make sure that the Plaintiff does not win, and no discovery is allowed.

144.3.      White should have retired twenty days after the convening of the 2021 General assembly session on January 13, 2021, as it can be assumed that White had attained age 73 as of January 13, 2021 (App. p. 41). See Virginia code § 51.1-305 (B1) *"Mandatory retirement. – Any member who attains 73 years of age shall be retired 20 days after the convening of the next regular session of the General Assembly following his seventy-third birthday"*. However, as of June 2021, White was still working as a judge of Circuit Court of Fairfax County in opposition to the plain language of the statute. Given Plaintiff's prior history with members of Virginia judiciary, it was not a stretch to assume that White was allowed to work as judge in order to take care of the Plaintiff.

145. Your Plaintiff got sick, and a continuance was granted by the calendar control judge without Judge White's knowledge. Judge White then retired on June 30, 2021.

146. On August 25, 2021, Judge David Bernhard (Judge Bernhard) heard the custody appeal.

147. Plaintiff filed a 'Motion to Bifurcate' the attorney fee issue with the trial court which was heard at the beginning of trial on August 15, 2021.

148. At the beginning of the circuit court trial on August 15, 2021, upon Plaintiff's 'Motion to Bifurcate' Judge Bernhard said that he would permit discovery on the attorney fee issue if your Plaintiff wins, but Judge Bernhard did not issue an order on Plaintiff's Motion to Bifurcate at the beginning of the trial on August 15,2021. See App. p. 28-35.

149. At the end of the one-and-a-half-day trial, Plaintiff won. The trial court held that Defendant Malik was not able to meet her burden to prove a 'material change in circumstances' and therefore the court had no jurisdiction to modify the custody of the minor children.

150. Plaintiff once again asked Judge Bernhard to allow Plaintiff to have financial discovery at the end of the trial on August 16, 2021.

151. Judge Bernhard did not grant or refuse discovery of Ms. Malik's income, assets, or attorney fees but asked your Plaintiff to file another motion in two weeks. (See App. p. 36-40).

152. This was the third motion on the issue of attorney's fees, and Judge Bernhard wanted
Plaintiff to file another motion just to do discovery. Three times should be enough to prove
that Defendant Malik was receiving significant aid from state judges. It is evident that
Judge Bernhard, like Judge White, was either helping the Defendants hide something or
just preventing the Plaintiff from propounding his case on the attorney fee issue.

153. Next hearing was schedule for September 10th, 2021. Plaintiff's attorney got a
notification that Judge Bernhard is busy on September 10th, 2021, and the hearing was
rescheduled for September 17th, 2021.

154. On September 15, 2021 at 4:05PM, Defendant Malik's attorney Solan provided
Defendant Malik's 2020 income tax return, 2021 checking account statements, and a **1099-
G from Virginia Employment Commission** as proof of Defendant Malik's
unemployment. Solan did not provide any record of attorney fees.

155. This was provided a day before the hearing scheduled for September 17th, 2021,
providing no time for the Plaintiff to review. This was not an orderly, timely, or proper
discovery.

156. Upon a cursory review everything looked in order, so Plaintiff did not pursue the issue of
attorney fees.

157. After the order was entered and once Plaintiff had a chance to review the documents, he
discovered that the 1099-G showing unemployment compensation (App. p. 2) from
Virginia Employment Commission (VEC) appeared to be forged[9]. Specifically, the 1099-
G, showing unemployment compensation, had the following inconsistencies:

---

[9] Plaintiff is a tax accountant who has seen several of these 1099-G from Virginia Unemployment Commission over
the years.

157.1.    The 1099-G submitted by defendant Malik was not in the format that VEC generally issues its 1099-Gs. See App. P. 3 for an example of an official document issued by VEC.

157.2.    The 1099-G produced by Defendant Malik had no document control number. The example document (App. p. 2) has a document control number.

157.3.    VEC is subject to all kinds of fraud, and it is a virtual impossibility that it would have a document control number on some 1099-Gs and not on others. That would defeat the purpose of having a document control number.

157.4.    The word Commission was misspelled as 'Comission' on the 1099-G provided by Defendant Malik. VEC issues millions of these documents every year and it is a virtual impossibility that VEC would misspell its own name on 1099-G issued to millions.

157.5.    The document provided a Copy A for Internal Revenue Service. Typically copy A is not provided to recipients. It is filed with the IRS. Only Copy B is provided to recipients.

157.6.    There are pixilation issues with the logo of VEC with appears to be inserted in the document.

157.7.    The address of VEC on the official document is stated differently than the 1099-G provided by Defendant Malik.

157.8.    Certain lines of text are misaligned on the document provided by Malik.

157.9.    The original document provides a customer service phone number for VEC and the 1099-G submitted by Defendant Malik does not provide a phone number for customer service.

158. Plaintiff will prove through this case that the 1099-G provided by Defendant Malik was forged.

159. Plaintiff will also prove that Defendant Solan conspired with Defendant Malik to help her commit fraud by not submitting evidence of attorney fees to the Plaintiff.

160. The scheme that was used here by the Defendants was to object to discovery. When Plaintiff filed a 'Motion to Compel' discovery, the motion was denial by Judge White and Subsequently Judge Bernhard denied refused to allow discovery, a total of three times. When Plaintiff continued to ask for discovery, Defendants Malik and Solan provided discovery at the last minute so that the Plaintiff did not have a reasonable time to review the documents and the document that was provided was forged. All of these actions amount to a conspiracy to commit fraud by Defendants White, Bernhard, Solan, Alzamora, and Malik.

161. At all relevant times, Defendants were acting under the color of the law, as they received significant aid, from the judges in Virginia, or actions otherwise attributable to the state. As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages:

    161.1.1.      Violation of his constitutional rights (i.e., Due Process and Equal Treatment of Law) under the Fourteenth Amendment of the United States Constitution.

    161.1.2.      Loss of Property.

    161.1.3.      Loss of attorney fees in defending himself from the various and extensive legal actions perpetrated by the Defendants under the color of the Virginia law;

    161.1.4.      Mental anguish and harassment caused by the Defendants; and

161.1.5.    Loss of ability to get a proper child custody arrangement from the courts in Virginia in order to protect the best interests of the Plaintiff's children.

## COUNT I

*42 U.S.C §1983 Against Defendants Malik, Solan, Hoffman, Alzamora, Solan Alzamora, PLLC*

162. Plaintiff re-alleges and incorporates by reference ¶¶ 1-161

163. Plaintiff alleges that Nicholas Solan is the master architect behind the conspiracy alleged in this complaint resulting in violation of Plaintiff's 14th amendment rights.

164. Plaintiff claims damages under 42 U.S.C. § 1983 for the injuries set forth above against Defendants Nosheen Malik, Nicholas J. Solan, Andrew P. Hoffman, Jacob Alzamora, Solan Alzamora, PLLC for violation of his constitutional rights under color of law.

## COUNT II

*42 U.S.C §1983 Against Defendants Mark Vogel, Kirstine N. Conners (also known as Kirstine N. Fors)*, **Gross Mendelsohn and Associates, P.A**

165. Plaintiff re-alleges and incorporates by reference ¶¶ 1-161

166. Plaintiff claims damages under 42 U.S.C. § 1983 for injuries set forth above against Defendants Mark C. Vogel, Kirstine N. Conners (a.k.a. Kirstine N. Fors), Gross, Mendelsohn and Associates, P.A. for perjury resulting in violations of his constitutional rights under the color of law.

## COUNT III

***42 U.S.C §1983 Against Defendants Bruce D. White, Randolph A. Beales, Clifford L. Athey, Jr. James W. Haley, Jr., S. Barnard Goodwyn, D. Arthur Kelsey, Charles S. Russell, David Bernhard***

167. Plaintiff re-alleges and incorporates by reference ¶¶ 1-161

168. Plaintiff claims damages under 42 U.S.C. § 1983 for the injuries set forth above against White, Beales, Athey, Haley, Goodwyn, Kelsey, Russel, and Bernhard for providing significant assistance to the Defendants in order to violate Plaintiff's 14th Amendment rights under the color of state law.

169. Plaintiff alleges that Defendants White, Beales, Athey, Haley, Goodwyn, Kelsey, Russell, and Bernhard conspired together to violate Plaintiff's 14th Amendment rights which resulted in injuries to the Plaintiff under the color of state law. Conspiracy to violate rights is not a judicial function and Defendants should not be provided judicial immunity.

170. Plaintiff alleges that Bruce D. White should have retired 20 days after the convening of the 2021 Session of the General Assembly under Virginia law. However, he continued to perform judicial functions as of June 2021 and was not retired. His actions in the custody case were outside the scope of his employment as a judge and, therefore, he should be **not** provided judicial immunity.

171. Plaintiff alleges that Defendant White and Bernhard were acting without any jurisdiction over the Plaintiff in the child custody action as once the divorce action was appealed, the Circuit Court had lost all jurisdiction over the parties and their controversies. White and Bernhard acted without jurisdiction, and their actions are not covered by judicial immunity.

172. Plaintiff alleges that judges Beales, Athey, and Haley were acting without appellate jurisdiction in issuing CAV's mandate when the case was with SCV, therefore, they should not be provided judicial immunity.

173. Plaintiff alleges that Justices Kelsey, Goodwyn, and Russell helped Judges Beales, Athey, and Haley by not issuing a mandate which should have been issued by SCV. They were all conspiring together. Once again, Conspiracy is not a judicial function, and these Justices should not be provided judicial immunity.

174. Plaintiff alleges that Defendants White, Beales, Athey, Haley, Goodwyn, Kelsey, Russell, and Bernhard committed fraud upon the court which resulted in violations of Plaintiff's 14th Amendment rights.

## COUNT IV

### 42 U.S.C §1983 Against Defendants Bruce D. White, Marla Graff Decker, Donald Lemons

175. Plaintiff re-alleges and incorporates by reference ¶¶ 1-161

176. Plaintiff claims damages under 42 U.S.C. § 1983 for the injuries set forth above against Defendants Bruce D. White, Marla Graff Decker, Donald Lemons for violation of his constitutional rights under color of law under the theory of *Respondeat Superior*.

## COUNT V

### Injunction against Supreme Court of Virginia and its Chief Justice S. Barnard Goodwyn

177. Plaintiff re-alleges and incorporates by reference ¶¶ 1-161

178. Plaintiff claims injunctive relief against the Supreme Court of Virginia

179. Plaintiff has standing to sue the Supreme Court of Virginia for injunctive relief as the courts in Virginia have continued jurisdiction over Plaintiff's children's custody, visitation, and support under Virginia §20-124.2 and other Virginia statues. See *Kelley v. Kelley, 248*

*Va. 295, 298 (1994) "It is well established that a court "retains continuing jurisdiction to*

*change or modify its decree relating to the maintenance and support of minor children."*

180.  Virginia Courts have repeatedly violated Plaintiff's 14th amendment rights.

181.  Plaintiff believes that unless an injunction is issued against the Supreme Court of

Virginia, there is a high likelihood that the courts in Virginia will continue to violate his

14th amendment rights which will result in further harm to him and his children.


## STATUTE OF LIMITATIONS

182.  The Plaintiff's claim of 14th amendment violations (i.e., due process, equal protection) is

made under 28 U.S.C. § 1983. There is no federal statute of limitations for § 1983 claims,

so Virginia's limitation period which governs personal injury action must be applied.

*(Hendrick v. Caldwell, 232 F. Supp. 3d 868, 882 (W.D. Va. 2017), Lewis v. Richmond City*

*Police Dep't , 947 F.2d 733, 735 (4th Cir. 1991))*

183.  In Virginia, the statute of limitations for personal injury claims is two years, and

therefore, a two-year statute of limitations must be applied. See *A Soc'y Without a Name v.*

*Virginia , 655 F.3d 342, 348 (4th Cir. 2011) ("With regard to the § 1983... claims, the*

*statute-of-limitations period for both is two years.").*

184.  While state law dictates the applicable limitations period, federal law determines when

the cause of action accrues. *Nasim v. Warden , 64 F.3d 951, 955 (4th Cir. 1995). A cause of*

*action accrues "when the plaintiff possesses sufficient facts about the harm done to him*

*that reasonable inquiry will reveal his cause of action".*

185.  The Fourth Circuit adheres to the doctrine of continuing violation, in which *"claims*

*premised upon allegations concerning a continuing pattern of unlawful conduct that*

*remains in effect when a lawsuit is filed are not barred by the statute of limitations, even if the alleged pattern commenced prior to an otherwise pertinent limitations period." Scott v. Clarke, 64 F.Supp.3d 813, 826 (W.D. Va. 2014) (citing sources). For the continuing violation doctrine to apply, an actual violation must have occurred within the limitations period. Pledger v. City of Virginia Beach , 103 F.3d 119, 1996 WL 671730, at \*1 (4th Cir. 1996) (citing Woodard v. Lehman , 717 F.2d 909, 915 (4th Cir. 1983) ).*

186. Plaintiff's claim of injunctive relief against the Supreme Court of Virginia is not barred by the statute of limitations. See *Poe v. Lynchburg Training Sch. and Hosp. , 518 F. Supp. 789, 794 (W.D. Va. 1981) ("The remedies which plaintiffs are now permitted to seek encompass prospective relief only, premised on an allegedly continuing deprivation. ... Since the alleged deprivation is of a continuing nature, the action ... is obviously not time barred.") (citing Williams v. Norfolk and Western Ry. Co. , 530 F.2d 539, 542 (4th Cir. 1975) ); cf. Lyons P'ship, L.P. v. Morris Costumes, Inc. , 243 F.3d 789, 799 (4th Cir. 2001).*

187. The actions resulting in this lawsuit commenced on February 27, 2019, with a divorce proceeding in the Circuit Court of Fairfax County.

188. The case was then appealed to the Virginia Court of Appeals and then to the Supreme Court of Virginia.

189. The final order of the Supreme Court of Virginia denying Plaintiff's 'Petition for Appeal' and subsequent 'Motion to Vacate' was issued on April 13, 2021. The Supreme Court did not issue a mandate to the 'Court of Appeals'. SCV's final order upon the plaintiff's motion to vacate was a continuing violation of Plaintiff's 14th amendment rights.

190. The mandate from the Court of Appeals of Virginia to the Circuit Court of Fairfax County was issued on April 22, 2021. CAV's mandate was a continuing violation of Plaintiff's 14th amendment rights.

191. The order to release bond and determine judgement interest was entered in the Circuit Court of Fairfax County on August 6, 2021. This order was entered despite the fact that there was no legal basis to the underlying rulings and was therefore a continuing violation of Plaintiff's 14th amendment rights.

192. Once the divorce action was appealed, Defendant Malik started a child custody action which was unconstitutional and precluded from litigation without the leave of CAV and no leave was applied or provided. Regardless, the child custody action commenced on July 9, 2019, in Fairfax J&DR court. The action was finalized on October 30, 2020, in the J&DR court.

193. Defendant Malik then appealed the child custody action on November 9, 2020, in the Circuit Court of Fairfax County which got a de novo trial.

194. The final order was entered in September 2021. In this action Judges Bruce D. White and David Bernhard violated Plaintiff's due process and equal treatment rights by not permitting discovery which is a continuing violation of Plaintiff's 14th Amendment rights.

195. The last violation of Plaintiff's 14th Amendment rights in the 'child custody' action was done on August 16, 2021, when Judge Bernhard refused to provide a ruling on Plaintiff's third motion asking the court to allow discovery.

196. Plaintiff discovered the apparent forgery in 1099-G provided by Defendant Malik around December, 2021.

## CLAIM AND ISSUE PRECLUSION

Plaintiff's claims are not precluded because the claims of 14th amendment violations were not made and could not have been made in the underlying divorce and child custody proceedings. Further, the cause of action originated from the Defendants violations of Plaintiff's 14th amendment rights in the underlying proceedings.

There is no issue preclusion as the proceedings were marred with violations of Plaintiff's 14th amendment rights to due process and equal protection. Plaintiff contends that the all the issues decided under equitable distribution in a divorce proceeding were decided in opposition to well-established Virginia's law. If these issues were decided under Virginia's law, the Plaintiff challenges the constitutionality of these laws.

Not permitting valid requests for discovery is not subject to issue preclusion.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request this Court:

A. Enter judgement in favor of Plaintiff and against Defendants.

B. Enter an order declaring Defendants' conduct unconstitutional.

C. Award Plaintiff compensatory and punitive damages against Defendants.

D. Award Plaintiff's Counsel reasonable attorney' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provision of law.

E. Enter an injunction, upon proper motion, requiring the Supreme Court of Virginia to stop violating Defendant's constitutional rights to due process and equal protection.

F. Grant to Plaintiff such other and further relief as may be just and proper under the circumstances, including but not limited to appropriate injunctive relief.

**JURY TRIAL DEMANDED**

Plaintiff demands a jury trial, pursuant to the Seventh Amendment to the Constitution of the

United States, as to all claims for damages.

Respectfully Submitted,

Hassan Sultan, Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRIGINIA**
_ALEXADRIA._____ **DIVISION**

**Hassan Sultan**
_____
                    Plaintiff(s),

                    v.

                                            Civil Action Number: _1:23-CV-457_

**Nosheen H. Malik, Et. al.**
_____
                    Defendant(s).

## LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of** _____**Complaint**_____.
                                            **(Title of Document)**

**Hassan Sultan**
_____
Name of _Pro Se_ Party (Print or Type)

_____
Signature of _Pro Se_ Party

Executed on: _____**4/7/2023**_____ (Date)

                    **OR**

**The following attorney(s) prepared or assisted me in preparation of** _____.
                                            **(Title of Document)**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of _Pro Se_ Party (Print or Type)

_____
Signature of _Pro Se_ Party

Executed on: _____ (Date)